FREDERICK E. BRADLEY AND RUSSELL M. BRADLEY v. THOMPSON SMITH'S SONS (A CORPORATION).

98 449<br>117 544

*Set-off—Assignment of claim.*

Where a debtor contracts with his creditor to perform certain labor, and, before entering upon the work, assigns the contract to third parties, who have guaranteed its performance, the creditor cannot set off, in a suit by the assignees to recover the contract price, his demand against the debtor which was due when the assignment was made.

Error to Bay. (Cobb, J.) Argued October 5, 1893. Decided January 26, 1894.

*Assumpsit.* Plaintiffs bring error. Reversed. The facts are stated in the opinion.

*Hatch & Cooley,* for appellants.

*McKnight, Humphrey & Grant (Oscar Adams,* of counsel), for defendant.

HOOKER, J. The defendant was a creditor of one Doyle. On March 24, 1891, it and Doyle made a written contract, by which Doyle agreed to drive a quantity of logs for it. On the same day, plaintiffs guaranteed said contract, "and the payment of the men promptly, by W. H. Doyle," in

98 MICH.—29.

writing, upon the contract, and in defendant's presence. Immediately below this guaranty was the following, viz.:

"I hereby sell and assign to F. E. Bradley & Co. all my right, title, and interest in and to the within contract, and direct that all payments to become due on this contract to me be paid to them.                    W. H. DOYLE.
"Dated March 24, 1891."

On April 7, 1891, a contract was made by telegraph between Doyle and the defendant, whereby Doyle was to "break in" the logs for 20 cents per 1,000 feet. This contract was also assigned to plaintiffs, of which defendant was notified April 17. Under these contracts, Doyle earned $2,202, of which $367 was for breaking in. The first work was done April 23. The plaintiffs offered evidence to show that the work was done at their expense, but this was excluded, and plaintiffs excepted. The defendant proved its claim against Doyle, amounting to $1,524.89, which the court allowed to be set off against plaintiffs' claim, to which plaintiffs excepted.

This raises the question whether a creditor can set off against the assignee of a chose in action not due at the time of the assignment a claim which was mature before that time. Had both claims been mature, i. e., due and payable, at the time of the assignment, no doubt of the right to set off either could be entertained. And it is equally clear that, if the assigned claim had been mature, an immature one could not be set off. We find numerous cases sustaining this proposition, and one of them (*Coffin v. McLean*, 80 N. Y. 563) apparently denies the right of set-off under the facts in this case. Mr. Justice Folger says:

"Nor is it [set-off] permitted, except when the demands are mutual; that is, where both were due and payable before the transfer of *either* to a third party."

In that case the claims sought to be set off were of two kinds. Some fell due before the assignment to the plaintiff, and some after. The obligation sued upon was joint, while the claims sought to be set off were several; and this is one ground upon which that decision is based, and applies to all of the claims sought to be set off. The claims of the latter class were also open to the objection that they did not fall due until after the assignment. But the question of the right to set off a claim mature at the time of the assignment against a plaintiff assignee of an immature claim did not necessarily arise.

Three New York cases are cited to sustain the two reasons for the decision: *Beckwith v. Bank*, 9 N. Y. 211; *Patterson v. Patterson*, 59 Id. 574; *Jordan v. Bank*, 74 Id. 467. The cases of *Beckwith v. Bank* and *Jordan v. Bank* were cases where the claims attempted to be set off matured after the assignment to the respective plaintiffs. That of *Patterson v. Patterson* was where a bond was taken by plaintiff's testator, in his lifetime, conditioned to pay a sum to his executor after the testator's death. This was held to be a claim against which a debt due from the testator in his lifetime could not be set off. The opinion in this case was also written by Mr. Justice Folger. In demonstrating that the cause of action upon the bond did not arise until after the testator's death, he asserts that a cause of action does not arise from the contracting of an indebtedness alone, but out of the non-performance of it as well; and he cites authorities to sustain the proposition that a cause of action does not run from the making of a promise to do something at a future time, but only from the expiration of that time. Were we to apply this logic to the present case, we should be compelled to admit that, at the time of the assignment, the plaintiffs' assignor had no demand whatever, except a contract to be performed, whereby the defendant might later become indebted. Had

the assignment not been made, the obligation would have matured immediately upon the performance of the contract by Doyle, and the right of set-off by either Doyle or the defendant would have been complete. In such case, Doyle's subsequent assignment would not deprive the defendant of the right of set-off. But plaintiffs' contention is that if Doyle assigned his contract before it matured, though it were but an hour before, his assignee could collect the consideration, to the exclusion of the defendant's set-off. Doyle is permitted to sell his claim before it matures. Plaintiffs say to defendant: "We bought our claim against you before it was due, and therefore it was not the subject of set-off when we bought it. It is true that by the terms of your contract with Doyle you had a right to become Doyle's debtor, and all rights that we have acquired are those which Doyle had under the contract. We own the claim against you because we bought it, and we will collect it from you because when we bought it there was no claim against you. It not being due, there was no debt."

The right of set-off has its origin in the injustice of allowing a person to collect a debt when he is at the same time indebted to his debtor in a sum as large or larger than his own claim. And one who buys a claim against another, not negotiable, takes it subject to all rights of set-off due at the time of his purchase. If A. buys a claim due to-day, B. can set off a debt which is due. If, however, A. has bought the claim half an hour before midnight, the rule is said to be otherwise, though it is difficult to see much difference in defendants' equities in the two cases.

It is urged that the assignor had merely a contract, which performance would ripen into a valid demand. This he sold, and plaintiffs took it with all its obligations and equities. As the assignor could not avoid defendant's right of set-off if he had kept it, and could not convey any

greater right than he had, it is said that plaintiffs took no more than the assignor could convey. Until performance, the plaintiffs had no claim against defendant. Coincident with the maturity of the demand, the right of set-off attached. There is apparent force in this reasoning.

The case of *Stewart v. Anderson,* 6 Cranch, 203, is a case decided by Chief Justice Marshall, which seems to recognize the doctrine that the assignment of a claim before maturity does not relieve it from set-off. On April 25, 1807, A. gave H. a note, which came to the hands of plaintiff, Stewart, by assignment on August 14, being before maturity, the note being due about October 25, 1807. On June 29, H. gave A. a note payable in 60 days, *i. e.,* August 31, 1807. Stewart brought an action against A., who was allowed to set off his note against H. It will be observed that Stewart acquired a claim that was not due, yet the set-off was allowed, and this, too, though the note set off was not due; the case differing from, and going further than, this, in that particular. It should be remembered that the act of the Virginia assembly under which this decision was made provided that—

"Assignments of bonds   *   *   *   shall be valid; and an assignee   *   *   *   may thereupon maintain an action of debt, in his own name, but shall allow all just discounts, not only against himself, but against the assignor, before notice of the assignment was given to the defendant."

It was argued upon the trial that a claim "could not be a just discount until it became payable," and that "money cannot be offset before it be due."

This case appears to support defendant's contention. But it differs from the present case, in that there was a *debt* which had been assigned. It was not a case of executory contract, under which a debt might at a future time be created. True, this debt was not due, but the consideration had passed. The sum had been earned, as

the giving of the note implies.   The maker of such note was a debtor before maturity, and the holder a creditor. Unless by reason of its negotiability, he could only dispose of such note subject to equities; and while we do not find it necessary to hold that the maker had an equity to the right to set off his existing claim, already due, when the note should mature, and do not so hold, we can see that such a conclusion, as in the Cranch case, falls far short of the doctrine that such right should apply to a case of a promise to pay at a subsequent date, when the promisee should have earned the amount.   It is a difference between an existing obligation to pay money already earned, at a future date, and an existing contract, where the debt does not exist, and will not, unless the consideration, whatever it may be, shall be performed.   In the one case the holder of the promise to pay has an existing liquidated demand, contingent upon nothing, which he will inevitably have the right to demand and collect at the end of a specified time.   In the other, he has no such demand, but an executory promise to pay upon the performance of something else.   His right of action, when it accrues, may be a mere action for damages for a breach of contract.   He could not set off such right, if the promisor should sue him upon the cross-demand, and it is a matter which may never become a debt.   The case in Cranch, under the Virginia statute, seems to have permitted set-off in the former case, but we have found no authority that extends the rule to the latter.

Furthermore, there is no opportunity to enlarge the doctrine of set-off.   It is a statutory right, in derogation of the common law, and must be strictly construed.   *Woods v. Ayres,* 39 Mich. 348; *Robbins v. Brooks,* 42 Id. 63. Section 7365, 3 How. Stat., provides that, "in the following cases,   *   *   *   a defendant may set off demands which he has against the plaintiff."   First, then, it must

be a demand, as contradistinguished from a right of action. *Hanna v. Pleasants,* 2 Dana, 269; *Gould v. Kelley,* 16 N. H. 560; *Drew v. Towle,* 27 Id. 412; *Hepburn v. Hoag,* 6 Cow. 613. If the demand has been assigned to the plaintiff, a demand existing against his assignor at the time of the assignment, and belonging to such defendant before notice of assignment, may be set off, if it was such as might have been set off against the assignor while it belonged to him. 3 How. Stat. § 7365, subd. 8. The language of this subdivision is a little blind, by reason of the use of the word "by," instead of "to," in the second line, but we think that its meaning is unmistakable. This claim of defendant was a proper subject of set-off against that of the plaintiff assignees only if it was such against the assignor while he was the owner of it. That it was not is plain, because this claim, *i. e.,* that assigned, was not then due; and subdivision 5 provides that "it can be allowed only in actions founded upon demands which could themselves be the subject of set-off according to law." Under this provision, defendant's claim, though due, did not become a subject of set-off before the assignment, because the assignor never had a right of action upon a demand which could have been the subject of set-off. As there never was a time, while Doyle owned the contract, when, under this statute, defendant's claim might have been set off against him, it is not such a demand as can be set off against the assignees. Subdivision 8; *Richards v. La Tourette,* 53 Hun, 623; *Richards v. Village of Union,* 48 Id. 263.

The evidence shows that the contract for driving the logs was altered before it was executed, at the suggestion of the plaintiffs, who were to guarantee performance by Doyle. The following language was inserted, viz.:

"A payment of fifty cents per thousand is to be made when the jam has passed the East branch, and the balance.

when the rear is within the boom company's limits. It is understood that the jam mentioned is of the $T_2$ logs."

The request of the guarantors that the defendant so amend the contract as to provide for payment in installments is significant. Evidently, they were providing a way for Doyle to obtain money to do the job with, and thereby lessening the danger of their being subjected to loss upon their guaranty. The defendant could not shut its eyes to this, and was in duty bound to inform the guarantors of its intention to apply the existing claim against Doyle, of which the guarantors were ignorant, in payment. This is the more apparent when we consider that the guaranty which defendant was exacting included the payment of the men who were to be employed by Doyle, and which defendant was insisting that the plaintiffs should assure. Under such circumstances as the plaintiffs claim to exist, the defendant would be estopped from setting off its claim upon the larger contract (if not both), which it had not disclosed, to the extent, at least, of the amount paid by plaintiffs; and this might be so although there was an express agreement, of which they were ignorant, between Doyle and the defendant, that the work should be performed and applied in payment of defendant's claim against him. The question of estoppel would be one for the jury, under all the facts which could be shown to bear upon it.

The judgment will be reversed, and a new trial ordered.

The other Justices concurred.