[No. 3976. Decided April 21, 1902.]

GRATON & KNIGHT MANUFACTURING COMPANY, Appellant, v. J. REDELSHEIMER, Respondent.

APPEAL — STATEMENT OF FACTS — CERTIFICATION BY JUDGE PRO TEMPORE AFTER SUCCEEDING TO OFFICE.

The fact that a statement of facts was certified by one of the judges of the superior court, while the action was tried by such judge as a judge *pro tempore*, before he succeeded to the office, would not be ground for striking the statement, since it fully

meets the requirement of having been certified by the judge who tried the cause.

SAME — CONTENTS OF BRIEFS.

The failure of appellant to comply with the requirements of rule 8 of the supreme court respecting the contents of briefs may be cured by the filing of new briefs fully complying therewith.

PRINCIPAL AND AGENT — APPARENT AUTHORITY OF AGENT — QUESTION FOR JURY.

Where an agent is put in charge of the business of a principal, with power to sell its goods, collect for the same, make purchases of other dealers when it is necessary to fill orders calling for goods that may not be in the stock of which he has charge, it is a question for the jury to determine, in an action by the principal to recover the amount of checks claimed to have been wrongfully negotiated by such agent, whether or not the agent had apparent authority to pay for the goods so purchased, even by indorsing for that purpose checks payable to his principal.

CORPORATIONS — ULTRA VIRES — WHEN CANNOT BE INVOKED.

The doctrine of *ultra vires* cannot be invoked for the purpose of permitting a corporation to recover money paid by it for the purchase of goods beyond the scope of its charter powers, when it had received and appropriated such goods to its own use.

CONVERSION OF BANK CHECKS — INSTRUCTIONS.

In an action for the recovery of the amount of certain bank checks payable to the order of the plaintiff, and alleged to have been wrongfully indorsed in its name and delivered to defendant, who in turn indorsed them and collected the proceeds, an instruction that the defendant's liability was limited by the rule of law applicable to intermediate indorsers, was erroneous.

SCOPE OF AGENT'S AUTHORITY — EVIDENCE.

Where the extent of an agent's authority is one of the issues in an action, it may be shown by any competent evidence, although the party sought to be charged had no knowledge thereof.

SAME — ADVERTISEMENTS OF PRINCIPAL'S BUSINESS.

In such a case, certain advertisements of the principal's business contained in a city directory, set in display type, in which the agent is described as the local manager of the principal, is admissible in evidence, not as showing the agent's actual authority, but as a circumstance tending to show that the principal had

permitted him to hold himself out to the public as possessing the authority usually given to agents occupying similar positions.

Appeal from Superior Court, King County.—Hon. WILLIAM R. BELL, Judge. Reversed.

*John P. Hartman* and *William Y. Masters*, for appellant.

*Richard Saxe Jones*, for respondent.

The opinion of the court was delivered by

FULLERTON, J.—The appellant brought this action to recover the amount of three certain bank checks drawn in its favor and payable to its order, which checks, it alleges, were wrongfully and without its authority indorsed in its name by one G. H. Bynon, and delivered to the respondent, who collected the same and refused, on demand, to turn the proceds thereof over to it. The respondent, for answer, admitted receiving the checks described, but denied that they were indorsed and delivered to him by Bynon without authority from the appellant; further alleging a state of facts tending to show an apparent, if not an actual, authority on the part of Bynon to indorse the same. He also denied that he had collected the checks, averring that on receipt of them he regularly indorsed and delivered them to a national bank doing business at Seattle, and that the same were collected, if collected at all, by the bank named. The action was tried by the court and a jury, and resulted in a verdict and judgment for the respondent.

The respondent moves to strike from the records the statement of facts and the appellant's briefs, and dismiss the appeal.

The motion to strike the statement is based upon the grounds that the action was tried by one W. R. Bell, judge

*pro tempore,* while the statement is certified by W. R. Bell, one of the regularly elected judges of the superior court of King county. The motion is not well taken. It is conceded, and it is recited in the certificate, that the statement is certified by the judge who tried the cause; the facts being that Mr. Bell succeeded to the office of superior judge between the time he tried the cause as judge *pro tempore,* and the time the statement was presented to him for certification. While he could have certified to the statement as judge *pro tempore,* under the authority of the case of *Nelson v. Seattle Traction Co.,* 25 Wash. 602 (66 Pac. 61), the fact that he used his official title can make no difference. The material requirement is that it be certified by the judge qualified so to do. When this appears, a wrong title following his signature will not vitiate the certificate. The motion to strike the briefs is based upon the ground that they fail to comply with rule 8 of this court, and is equally without merit. If the briefs originally filed could be considered as not fully complying with the requirements of the rule, the appellant has cured the error by preparing and filing new briefs fully complying therewith. *Young v. Borzone,* 26 Wash. 4 (66 Pac. 135).

It is first assigned that the court erred in refusing to take the case from the jury and enter judgment for the appellant. From the record it appears that the appellant is a corporation duly incorporated under the laws of the commonwealth of Massachusetts, having authority under its charter to engage in the business of "the manufacture of leather belting and the leather for the same, and buying and selling and tanning hides and skins, and buying and selling and making leather and all products of tanning, and belting of all kinds, and lacings, and all belting and factory supplies, and counters and soles and all shoe manu-

facturers' supplies and leather goods and preparations of oils and grease and dressings used in connection with leather and otherwise." It also appears that appellant has branch stores for the sale of its goods at various places in the United States, among which are Portland, Oregon, and Seattle, Washington; that at the time of the transactions in question the branch at Seattle was under the general supervision of the Portland branch, but was managed locally by one G. H. Bynon. Bynon, the appellant contends, was an agent with limited powers. It concedes that he was in charge of its store at that place, and had authority to sell its goods, collect for the same, and, when necessary to fill an order for goods in its line which the appellant did not have in stock, was authorized to purchase from other dealers, in appellant's name, sufficient goods to fill the same. It is also conceded that customers of the appellant doing business outside of the city of Seattle would frequently send in orders for goods, not all of which were in the appellant's line, and that Bynon would fill these orders by purchasing in appellant's name, from dealers handling the same, such goods as the appellant did not carry which were required to fill the orders, the bills for which would be delivered to Bynon and by him sent to the Portland office and paid from that point. It was testified, however, on the part of the appellant, that Bynon's authority was limited to running bills; that he had no authority to pay for goods purchased by him on appellant's behalf, whether the same were goods in appellant's line or otherwise, but that all such bills were required to be forwarded to the Portland office, to be audited and paid from that place; that he had no authority to indorse checks in appellant's name by himself as manager (the manner in which the checks in suit were indorsed), but by a special arrangement made with a local bank, "to save exchange", he was

permitted to indorse for deposit checks received by him in payment for goods sold and deposit the same therein in appellant's name, along with such cash as might be received by him from the same source; that a rubber stamp was provided him for making such indorsements; that he was required to make deposits daily and forward the duplicate deposit slips to the Portland office. The respondent is a dealer in clothing and men's furnishing goods. He testified that at different times, extending over a year previous to his receipt of the checks in question, he had sold bills of goods to the appellant on Bynon's orders, making some ten or twelve of such sales; that all of such sales had been made on credit, and had been afterwards paid for by Bynon, sometimes in cash, and sometimes in checks drawn in favor of the appellant and indorsed in appellant's name by Bynon as manager; that, when the first bill was ordered, Bynon stated to him that he was the appellant's manager selling its goods, and that people often included in their orders goods which the appellant did not carry, and, if he could make arrangements with him to supply them, they would be paid for in time; that he inquired among his neighbors to ascertain the appellant's standing, saw that Bynon was advertised in the city directory of Seattle as appellant's manager, and that he dealt with him without knowledge that his authority was less than it was thus represented to be; that he did not know what became of the goods sold upon Bynon's orders; that they were generally of a rough character, such as commonly worn by lumbermen; and that no one order was very large. He further testified that the checks in suit were taken by him at separate times in payment for goods sold in this way to the appellant on Bynon's orders, and that they were taken at their face value; the difference between the amount each check called for and the amount of the bill then due being

paid to Bynon in cash taken from his money drawer. There was further evidence tending to show that Bynon dealt with other persons as appellant's manager similarly to his dealings with respondent, and had paid certain of the bills thus contracted with checks drawn in appellant's favor, indorsing thereon its name by himself as manager. While the evidence is meager as to the general manner in which the appellant's business was conducted at Seattle, enough does appear to show that it was not different from that of dealers generally who place their business in the hands of employees. Bynon was placed in charge as the apparent sole representative of appellant at that place, and was the person, and generally the only person, who would be met by one seeking to deal with the appellant. In fact, it was testified by a witness who had dealt with the appellant at different times covering a considerable period of time that he never knew any one connected with the concern, other than Bynon; that Bynon represented the appellant in making sales to him, made out, collected and receipted for the bills of his purchases, and appeared to have general charge of the appellant's business. Bynon, it may be added, absconded with a large sum of the appellant's money.

This evidence was sufficient to authorize the court to submit the question of the respondent's liability to the jury. While it is true a principal may limit the authority of its agent in any manner it pleases, and while such limitations are obligatory as between the principal and agent, and the principal and any person dealing with the agent with knowledge of the limitations upon his authority, as between the principal and one having no knowledge of any such limitations the agent's authority is such as is properly inferable from the nature of his employment. In other words, a principal is responsible for the acts of his

agent when the agent acts within the apparent scope of his authority, no matter what may be the limitations fixed upon that authority, so long as such limitations are not communicated to the person or persons with whom the agent is authorized to deal. And where, as in this case, an agent is put in charge of the business of a principal with power to sell its goods, collect for the same, make purchases of other dealers when it is necessary to fill orders calling for goods that may not be in the stock of which he has charge, it would be too much to say, as a matter of law, that the agent did not have apparent authority to pay for the goods so purchased, even by indorsing the checks of his principal for that purpose; at least, it is a question on which common minds might reasonably differ, and for that reason a question for the jury.

We have not overlooked the contention to the effect that the corporate powers of the appellant, as shown by its charter, does not authorize it to deal in goods other than a particular kind, and hence it had no authority to make such purchases as were made of the respondent even had it directly authorized its agent so to do. But this cannot aid the appellant. A corporation has sometimes been permitted to disavow an unexecuted contract which it has attempted to enter into, because beyond the scope of its charter powers; but the doctrine of *ultra vires,* so far as we are aware, has never been invoked successfully when the purpose was to permit a corporation to recover money paid by it for the purchase of goods which it had received and appropriated to its own use.

The court gave to the jury the following instruction:

"You are further instructed that the laws of the state of Washington prescribe the liability of an intermediate indorser upon a check, and such laws provide as follows: Every indorser who indorses without qualification war-

rants to all subsequent holders in due course that the instrument is genuine, and in all respects what it purports, to be; that he has a good title to it; that all prior parties had capacity to contract; that on due presentation it will. be accepted or paid, or both; and that if it be dishonored, he will pay the amount thereof to the holder, or to any subsequent indorser who may be compelled to pay it.

"If you find from the evidence in this case that the checks upon which this action is founded were regularly delivered to an agent of the plaintiff, no matter what the authority of that agent was; that such checks were transferred to the defendant in the regular course of business, no matter whether the indorsement thereon was genuine or forged; that the defendant, in the regular course of business, indorsed such checks and delivered them to some person, corporation, or bank, other than the one upon which drawn, and received either money or credit thereon, in the regular course of business, and indorsed said checks for the purpose of transferring them, and such other person, corporation, or bank afterwards indorsed the same to another person, corporation, or bank, then you are instructed that the defendant, Redelsheimer, became an intermediate indorser of those checks, and is liable only to subsequent holders in due course, and is not liable to prior holders or indorsers, even though the prior indorsement may have been forged. Under the laws of this state, the contract of the indorser is only with the subsequent holders in due course of business, and the contract is that which I have heretofore stated to you, and there is no contract between the intermediate indorser and the holder or indorser next prior to him; that in this case it is conceded that the plaintiff, Graton & Knight Manufacturing Company, is not a subsequent indorser of these checks in the due course of business."

This was error. It is doubtless true that the respondent is liable as indorser only to the subsequent holders in due course, but the appellant's right of action is founded upon an entirely different principle. The appellant's action is founded upon the claim that the respondent re-

ceived certain checks belonging to it, indorsed in its name by a person having no authority or apparent authority so to do, collected the same, and appropriated the proceeds thereof to his own use. If this be true, if the respondent did receive the appellant's checks, collect and appropriate the proceeds thereof to his own use, knowing, or having knowledge of such facts as would cause a reasonable man to believe, that the person indorsing and delivering them to him had no authority to so indorse and deliver them, he is responsible to the appellant therefor, and can be sued as for conversion, or for money had and received to the appellant's use. It can make no difference that he did not personally collect the checks from the payee. As between him and the appellant, his subsequent indorsers are but his instruments for the collection of the checks. To them he may be liable upon his contract as indorser, but to the appellant he is liable, if liable at all, as for a wrongful appropriation of its property.

The court withdrew from the consideration of the jury certain oral evidence tending to show what the authority given Bynon was with reference to the indorsement of checks, for the reason that it was not shown that it had been communicated to, or that the respondent had knowledge thereof. This was error. The extent of Bynon's actual authority was one of the issues in the case, and the appellant was entitled to show its extent by any competent evidence.

It is claimed that the court erred in admitting in evidence certain advertisements of the appellant's business contained in the city directory of the city of Seattle, set in display type, in one of which Bynon was described as appellant's local manager. It was shown that this particular one was inserted by Bynon shortly after he was employed by the appellant; one of the appellant's witnesses, who

testified that he had charge of the appellant's advertising matters, saying that it was unauthorized by and unknown to him.    The others were insertions for the years immediately prior and subsequent to the one containing Bynon's name, in the first of which the agent was described as manager, and in the second as storekeeper.    The court admitted them, not as evidence of Bynon's actual authority, but as circumstances tending to show that the appellant had permitted Bynon to hold himself out to the public as possessing the authority usually possessed by agents occupying similar positions.    As such, we do not think they were objectionable.    They tended to show that the city directory was a medium adopted by appellant for the purpose of advertising its business; and it is not an unreasonable inference that the appellant knew or ought to have known, what such advertisements contained.    Furthermore, if any one is to suffer by the acts of Bynon done within the apparent scope of his authority while engaged in the transaction of the appellant's business, it must be the appellant itself.    It cannot put him in charge of its business, shut its eyes to his acts, and escape liability therefor by secret instruction limiting his authority.    It is under a duty to oversee how he conducts himself with reference to its business, and all of his acts with reference thereto can be shown, whether actual knowledge of each particular act can be brought home to the principal or not.

We have examined the other errors assigned and do not find them of merit sufficient to require special discussion. For the errors above mentioned, however, the judgment must be reversed and a new trial had, and it is so ordered.

REAVIS, C. J., and DUNBAR, ANDERS, MOUNT, HADLEY and WHITE, JJ., concur.