In re NIAGARA RADIATOR CO

(District Court, W. D. New York.   September 18, 1908.)

No. 2,591.

1. ASSIGNMENTS—RIGHTS ASSIGNABLE—EXECUTORY CONTRACTS.
    An executory contract for future delivery of personal property, not dependent on future dealings with the property sold between the parties, is assignable, in the absence of any provision to the contrary, although it provides for a term of credit to be given the purchaser, provided the assignor offers to relieve the seller from giving such credit and to pay cash on delivery.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 4, Assignments, § 25.]

2. BANKRUPTCY—ASSUMPTION OF CONTRACT BY RECEIVER—RIGHT TO ENFORCE.
    The receiver appointed for a bankrupt manufacturing corporation was expressly authorized by the court to continue the business and to assume a contract under which the company was to receive monthly deliveries of iron ore, for which it was to have a credit of 30 days. Pursuant to such authority the receiver notified the seller that he assumed such contract and would make payment for the ore as delivered, and a similar notice was given by him after his appointment as trustee. *Held,* that he succeeded to all the rights of the bankrupt under such contract, and that the seller was liable in damages for a failure and refusal to make deliveries as required thereby.

In Bankruptcy.

This is a review of an order made by Referee Judson finding that the petitioner, Sloss-Sheffield Steel & Iron Company, was indebted to the bankrupt estate herein in the sum of $10,296 as damages for failure to perform a contract made with the said bankrupt, Niagara Radiator Company, on September 16, 1906, for the delivery to it of 1,800 tons of iron ore in equal monthly deliveries during the first half of 1907 at the price stated in said contract, payment to be made 30 days after the shipment of each installment. Said order further provided that said amount of damages be set off against the claim of Sloss-Sheffield Steel & Iron Company of $12,595.50 for moneys due from said bankrupt under previous contracts, and that said claim be reduced to and allowed at the sum of $2,299. The receiver of said bankrupt, appointed by this court on January 8, 1907, was authorized to continue the business, to borrow money to conduct the business in a sum not exceeding $25,000, and was expressly authorized to assume the contract hereinabove referred to, and to compel its performance. At the time the petition in bankruptcy was filed herein neither party to the contract was in default thereon, and the contract was in full force. On January 12, 1907, said receiver notified Sloss-Sheffield Steel & Iron Company in writing that he elected to assume and carry out said contract, and requested deliveries of the pig iron to him, and offered to pay cash on such deliveries. Said receiver was on March 9, 1907, duly appointed trustee of said bankrupt, and as such receiver and trustee made other demands for deliveries of ore as specified in the contract, but the vendor repudiated and refused to fulfill its said contract.

Kenefick, Cooke & Mitchell, Lyman M. Bass, and Edward E. Franchot, for petitioner.
Kellogg & Baker, for trustee.

HAZEL, District Judge (after stating the facts as above).   The petitioner herein contends, first, that the contract is by its terms nonassignable, and any attempts by said receiver and trustee to assume the same were of no effect; and, second, admitting its assignability,

that the contract was never assumed by said receiver, except as to the contract for the January shipment, and that the same was never assumed by the trustee.

I think the conclusion of the referee that the contract in question was assignable, and that under section 70a (5) of the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451]) the rights of the bankrupt under said contract passed to the trustee was correct. The insolvency of the Niagara Radiator Company did not abrogate the contract, and while the extension of 30 days' credit after delivery probably involved relationship of trust and confidence, yet at the present time contracts containing no express language prohibiting their assignment—contracts for future deliveries of personal property, and not dependent upon future dealings with the property sold between the parties—are assignable, provided the assignee stands ready to relieve the vendor from his obligation to make deliveries on credit and offers payment. Nothing is found in the stipulation of facts to indicate that the parties to the contract regarded that they had entered into a contract containing conditions specifically relating to the ore after delivery. Had it been their intention to enter into a nonassignable contract, they were called upon to provide in terms for its nonassignability, or incorporate therein words from which such intention could be reasonably implied, for the 30-day credit provision, standing alone, could not be considered as evidence of such an intention.

Importance is placed by the petitioner on the case of Arkansas Valley Smelting Co. v. Belden Mining Co., 127 U. S. 379, 8 Sup. Ct. 1308, 32 L. Ed. 246; but a careful reading of the opinion of the court convinces me that the facts of that case do not make it a controlling precedent. Indeed, the circumstances of the case clearly point out that the rights springing from the contract to deliver lead ore at the smelting works of the assignor were coupled with dealings of a personal nature, and from which it could fairly be assumed that the contracting parties, having confidence in each other, entered into the specified arrangement. Neither the price of the ore nor the time of payment was agreed upon, but one of the parties to the contract was to assay it, and in case of disagreement it was to be assayed by a third party, and to fix the price it became necessary that the proportion of lead, silver, silica, and iron in the ore first be ascertained. The pith of the decision is found in the statement of the court that the defendant had no security for the payment of the ore between the time of delivery and the ascertainment of the price, and hence there could be no substitution for the original contracting parties. Here we have an executory contract to make deliveries at a specified time, the price being stated, and 30 days' credit being given, unaccompanied by any peculiar circumstances or conditions.

I think the principle announced in the cases of Pardee v. Kanady, 100 N. Y. 101, 2 N. E. 885, and New England Iron Company v. Gilbert El. R. R. Co., 91 N. Y. 153, is applicable to the facts set forth in the stipulation. Here, as in those cases, the receiver and trustee were able and willing to assume the contract, and, notwithstanding the bank-

ruptcy of the radiator company, were in a situation to pay, and offered to pay, on deliveries of the ore pursuant to the contract. The ability and offer on the part of the receiver or trustee to perform the contract, which was not such as to oblige the radiator company to perform in person, and to pay the contract price on delivery of the ore, was, in my judgment, sufficient to prevent its abrogation. The receiver in bankruptcy, having taken possession of the assets of the bankrupt and seasonably exercised his option to adopt the contract, and having given notice that he would on delivery of the ore pay therefor, succeeded to all the rights of the bankrupt, and the seller became liable upon the agreement for its failure to deliver the ore. United States Trust Co. v. Wabash Ry. Co., 150 U. S. 287, 14 Sup. Ct. 86, 37 L. Ed. 1085.

The next point is whether the assumption of the contract by the receiver was subsequently affirmed or ratified in its entirety by the trustee. The petitioner contends that the trustee in fact did not assume the contract, and that the assumption by the receiver covered only the right to have shipments of ore made in January. The receiver, on his appointment by the court, wrote the petitioner as follows:

"I hereby notify you that I assume as such receiver all the obligations of the Niagara Radiator Company under the contract, and shall expect you to perform it, hereby agreeing to pay cash on delivery if you so require."

This language is broad enough to constitute an assumption of the contract in its entirety, and is not limited to separate monthly deliveries. Unquestionably the title of the trustee, upon his appointment, related back to the filing of the petition, and the assumption of the contract by the receiver, by and with the consent of the court appointing him, in the absence of any negative intention by the trustee, must be deemed to have been ratified and confirmed by him. Moreover, his assumption of the contract appears clearly enough from the stipulation of facts, which indicates that in March and April, 1907, he in writing demanded the quotas of iron for those months under the contract. That he did not make formal demand for succeeding quotas is not thought important, as the petitioner undoubtedly understood that the contract in its entirety had been assumed by the receiver.

The order of the referee is affirmed, and the claim of the petitioner is allowed at the sum of $2,299.50.