DETERMINED IN THE

# SUPREME COURT

OF

# WASHINGTON

[No. 9629. Department One. November 23, 1911.]

JOHN J. SESNON, *Respondent*, v. JAFET LINDEBERG *et al.*,
*Appellants*, FRANK THATCHER, *as Administrator etc.*,
*Defendant.*[1]

CORPORATIONS—REPRESENTATION—OFFICERS—PROPERTY ACQUIRED—
CONTRACTS—CONSIDERATION—EVIDENCE—SUFFICIENCY. The evidence
sufficiently shows that certain properties and stock were secured by
the president of a corporation for the use and benefit of the corpora-
tion, so as to constitute consideration for the corporation's note to
repay the purchase price advanced, where the corporation took a
formal assignment of the stock of the company holding title to the
properties, and continued in the possession and control of the same.

CORPORATIONS—REPRESENTATION—POWERS OF SECRETARY—NOTES—
RATIFICATION. A corporation cannot question the authority of its
secretary to execute a promissory note, where it retained possession
of stock for which the note was given, and paid interest on the note.

CORPORATIONS—POWERS—PROMISSORY NOTES—SURETY OBLIGATION
—ULTRA VIRES. A corporation executing a note jointly with three
others, for which it received one-fourth of the consideration for
which the note was given, cannot claim that it was only a surety
as to the other makers and that the note was therefore *ultra vires*,
it being authorized to borrow money.

Appeal from a judgment of the superior court for King
county, Neal, J., entered January 27, 1911, upon findings in
favor of the plaintiff, after a trial on the merits before the
court without a jury, in an action upon a promissory note.
Affirmed.

[1]Reported in 118 Pac. 900.

*Roberts, Battle, Hulbert & Tennant,* for appellant Linde-
berg.

*William H. Gorham,* for appellant Sesnon Company.

*Harold Preston* and *George E. de Steiguer,* for respondent.

PARKER, J.—This is an action upon a promissory note
executed in favor of the plaintiff by Jafet Lindeberg, John J.
Sesnon Company, a corporation, by John H. Bullock its
secretary, and Cabell Whitehead, now deceased. The note
was for $20,000, dated February 4, 1908, matured August 1,
1908, and interest is provided for therein at the rate of ten
per cent per annum. A trial in the superior court without
a jury resulted in findings and judgment in favor of the
plaintiff, from which the defendants Lindeberg and the
John J. Sesnon Company have appealed. The contentions
of counsel for appellants involve principally the questions of
want of consideration, want of authority of the secretary of
the Sesnon Company to execute the note, and want of power
in that company to incur such an obligation.

The material facts involved may be summarized as follows:
About September 1, 1906, A. E. Boyd, Jafet Lindeberg,
Cabell Whitehead, John S. Sanger, and John J. Sesnon pur-
chased a toll road and right of way therefor, which was then
partially developed, at Nome, Alaska, for the sum of $20,000.
In order to raise the funds to pay this purchase price, they
on that day borrowed from The Alaska Banking & Safe
Deposit Company the sum of $20,000, evidencing their obli-
gation therefor by their promissory note for that sum, signed
by all of them, maturing September 1, 1907, and drawing
interest at 6 per cent per annum. This note thereafter
became the property of the Scandinavian American Bank of
Seattle. Respondent Sesnon claims that, in the purchase of
the toll road and making payment for it in this manner, he
was acting, not for himself, but for the John J. Sesnon Com-
pany, a California corporation, of which he was then the
president and principal stockholder; while appellants claim

that Sesnon was then acting in his own behalf. This is the principal controversy of fact involved in the cause, and was found by the trial court in accordance with Sesnon's contention.

The Sesnon Company was then engaged in an extensive lighterage and transportation business at Nome, and the evidence indicates that the company was interested in having this road developed, aside from the mere question of profit which might come to it as a part owner thereof. About this time, these same persons organized the Seward Peninsula Construction Company, a corporation, and transferred the toll road to it, with the understanding that each of them should receive one-fifth of the stock of that company. Soon thereafter the stock which was to go to Sanger passed by agreement to his associates, so that, so far as the records of that corporation showed, Boyd, Lindeberg, Whitehead and Sesnon each became the owner of one-fourth of that stock. This stock was about that time placed in the hands of either Sanger or Whitehead, with a view of selling the same in eastern markets. This purpose, however, does not appear to have been successfully carried out. It seems quite certain from the evidence that Sesnon never had in his possession any certificate of stock which stood in his name, except to assign it about this time for the purpose stated. All of this is claimed to have been done by Sesnon for the use of the Sesnon Company, as was found by the trial court.

Thereafter, about October, 1907, Sesnon sold his stock and interest in the Sesnon Company, though there was no election of his successor as president until May, 1908. We think, however, that the evidence warrants the conclusion that he did not assume to act as president after his sale of stock. Soon thereafter, Sesnon, being in Seattle, there received notice from the Scandinavian American Bank calling for payment of the note given by himself and his associates September 1, 1906, that note having matured September 1, 1907. The interest upon that note appears to have been

paid, but by whom is not clear from the evidence. It was not, however, paid by Sesnon, and at this time it apparently required only $20,000, the amount of the principal, to satisfy it. It is, of course, plain that Sesnon, by reason of his individual signature upon the note, was liable thereon to the bank, even though in all the matters culminating in that indebtedness he was acting for the use of the Sesnon Company. It was then, in Seattle, agreed between Lindeberg, Whitehead, John H. Bullock, as secretary of the Sesnon Company, and Sesnon—Boyd, the other maker of the first note being absent, and Sanger being out of the matter because of the previous transfer of his stock to the others—in substance as follows: Sesnon was to advance $20,000 for the payment of the note. Lindeberg, the Sesnon Company, and Whitehead were to execute their note for that sum, payable to Sesnon August 1, 1908, drawing interest at ten per cent per annum. Boyd being absent, and therefore it being impracticable to secure his signature to the new note at that time, the first note was to be indorsed by the bank, without recourse, to J. E. Chilberg in trust for Lindeberg, the Sesnon Company, and Whitehead, the makers of the new note. This resulted in preserving evidence of Boyd's obligation of contribution to the makers of the new note for his share of indebtedness under the first note, and was, we think, the real purpose of the taking of that note in trust by Chilberg. The stock of the Seward Peninsula Contruction Company which had been apportioned to Sesnon not being present, and the parties not seeming to have a very clear notion as to how the record title of that stock appeared, Sesnon was then, in consideration of being relieved from obligation upon the first note, to assign to the Sesnon Company this stock by formal instrument in writing. This arrangement was thereupon carried out by executing the new note and other papers as agreed, Sesnon thereupon paying to the bank $20,000, the bank assigning the first note to Chilberg in trust for the makers of the new one, and the new note deliv-

ered to Sesnon. The new note was dated February 4, 1908, though the arrangements were not entirely completed and the note delivered to Sesnon until about May 12, 1908.

Thereafter, in May, 1908, John H. Bullock was elected president of the Sesnon Company, of which company he had previously been secretary and treasurer. Thereafter, about August 1, 1908, Bullock, as president of the Sesnon Company, paid to Sesnon interest upon this second note from its date until July 31, 1908, amounting to $980.74. Thereafter Lindeberg and Whitehead reimbursed the Sesnon Company to the extent of the proportion of such interest they were obligated to pay. The stock of the Seward Peninsula Construction Company which was apportioned to Sesnon, including that going to him from Sanger, was in the possession of the Sesnon Company at Nome, Alaska, prior to the execution of this new note by Lindeberg, Whitehead, and the Sesnon Company to Sesnon for the $20,000 he advanced to pay the first note, and the Sesnon Company has ever since retained that stock and never made any offer to return the same to Sesnon. In December, 1908, the board of directors of the Sesnon Company adopted a resolution assuming to disavow the act of Bullock as secretary in executing the note with Lindeberg and Whitehead to Sesnon, but no offer of the return of the stock to Sesnon was made in connection with that resolution.

It is first contended by counsel for appellants that the acquiring of the interest in the toll road, and thereafter the stock in the Seward Peninsula Construction Company by Sesnon, was not for the use of the Sesnon Company, and, therefore, the indebtedness evidenced by the first note never became in any sense an obligation of the Sesnon Company. This seems to be the basis of the argument that there was no consideration moving to the Sesnon Company for the incurring of the obligation evidenced by its execution of the new note with Lindeberg and Whitehead to Sesnon, the note not here sued upon. If this question rested alone upon the

evidence which relates directly to what occurred at the time of acquiring the interest in the toll road and stock by Sesnon, such argument might be put forward with some degree of plausibility, since that evidence is somewhat in conflict. But when later events shown by the evidence are considered, such as possession by the Sesnon Company of the stock of the Seward Peninsula Construction Company which had been apportioned to Sesnon, the formal assignment of that stock over to the Sesnon Company at the time of the giving the new note to Sesnon, the continued possession and exercise of ownership over that stock by the Sesnon Company, the failure of the Sesnon Company to ever offer any return of that stock, the execution of the new note by the Sesnon Company with Lindeberg and Whitehead, in effect evidencing a loan from Sesnon to them of $20,000 which was used in paying the first note, we think the trial court was fully warranted in concluding that the acquisition of the toll road and stock in the Seward Peninsula Construction Company was at all times considered by the parties as being for the use of the Sesnon Company, and not for Sesnon personally, though in form the first note evidencing the obligation therefor was a personal obligation against Sesnon, in so far as the rights of the bank are concerned.

It is next contended that John H. Bullock as secretary was without power or authority to execute the note to Sesnon in the name of the Sesnon Company. If we were to view this question solely as one of authority existing at the time of the execution of that note, entirely apart from subsequent events, it would present an interesting and somewhat debatable question. We do not think, however, the rights of the parties rest upon a solution of that question viewed from that standpoint. The subsequent events, we think, clearly show a ratification of Bullock's execution of this note. The principal facts, as we have seen, pointing to their ratification are the payment of interest on the note by Bullock after he became president of the Sesnon Company,

from the funds of that company, and the retention by that company at all times thereafter of the stock of the Seward Peninsula Construction Company which had been formally assigned to it by Sesnon at the time of the execution of that note, if not long before. The following decisions of this court support this view: *Dexter Horton & Co. v. Long*, 2 Wash. 435, 27 Pac. 271, 26 Am. St. 867; *Allen v. Olympia Light & Power Co.*, 13 Wash. 307, 43 Pac. 55; *Windsor v. St. Paul, Minneapolis & M. R. Co.*, 37 Wash. 156, 79 Pac. 613; *McKinley v. Mineral Hill Consol. Min. Co.*, 46 Wash. 162, 89 Pac. 495. That the retention of the stock of the Seward Peninsula Construction Company by the Sesnon Company under the circumstances here shown would render it liable upon this note, even though such obligation was incurred by acts beyond its lawful powers, is indicated by the following decisions of this court: *Tootle v. First Nat. Bank*, 6 Wash. 181, 33 Pac. 345; *Wheeler, Osgood & Co. v. Everett Land Co.*, 14 Wash. 630, 45 Pac. 316; *Graton & Knight Mfg. Co. v. Redelsheimer*, 28 Wash. 370, 68 Pac. 879.

It is further contended that the attempted making of this note by the Sesnon Company was *ultra vires* and beyond the powers of that company, because it in effect makes it a surety upon that note, in so far as the obligations of the other makers thereof is concerned. It is argued that the Sesnon Company's obligation, growing out of the facts we have reviewed, in no event exceeded one-fourth of the original purchase price of the toll road and the stock of the Seward Peninsula Construction Company. If the Sesnon Company had signed this note merely as an accommodation endorser or maker, there might be some foundation to this contention. But in the execution of the note, there had, either then or previously, passed to the Sesnon Company a substantial consideration, to wit, the stock of the Seward Peninsula Construction Company. The Sesnon Company was no more surety for the other makers of the note than they were sureties for it. It is plain that the note was given in the

mutual interests of all three of its makers. We think there was such a substantial consideration, flowing to the Sesnon Company that it cannot be said that the giving of the note was such a contract of suretyship as falls without the corporate powers of that company. We find in its articles of incorporation introduced in evidence, among other powers there enumerated, the following: "Borrowing and lending money. Buying, selling and dealing in stocks, bonds and securities of other corporations, public and private." *Wheeler, Osgood & Co. v. Everett Land Co., supra,* and *Low v. Central Pac. R. Co.,* 52 Cal. 53, 28 Am. Rep. 629, lend support to this view, and we think that *Spencer v. Alki Point Transp. Co.,* 53 Wash. 77, 101 Pac. 509, 132 Am. St. 1058, is not in conflict therewith, in view of the facts of that case.

In addition to the above noticed contentions, appellant Lindeberg contends that the evidence shows that the stock of the Seward Peninsula Construction Company awarded to him was taken by him, one-fourth thereof in trust for Sesnon, and one-fourth only for himself, and that in no event should the judgment in this case go against him for more than that proportion of the debt here sued upon. This question of fact was resolved against Lindeberg by the trial court upon evidence that was somewhat conflicting, but which we think was ample to support the trial court's conclusion. It is therefore not necessary to discuss the question of Lindeberg's rights and obligation, in the light of subsequent events.

There are many other minor facts appearing in the evidence which we have not noticed. These, however, as we view them, would only lend additional support to our conclusions touching the original intentions of the parties, Bullock's authority as secretary in executing the note for the company, and the ratification of its execution by the company thereafter.

We conclude that the judgment must be affirmed, and it is so ordered.

DUNBAR, C. J., MOUNT, and GOSE, JJ., concur.

FULLERTON, J., concurs in the result.