[No. 10810.   Department Two.   February 13, 1913.]

J. W. KING, *Respondent*, v. WEST COAST GROCERY COMPANY, *Appellant*.[1]

CORPORATIONS—CONTRACTS — EXECUTION — VALIDITY — EVIDENCE— SUFFICIENCY. There is a *prima facie* valid execution of a lease by a corporation to its president, where it was signed by the president and secretary and also the other trustees, and attested by the corporate seal, and there was evidence that it was authorized by the trustees, although no record thereof was made.

SAME. The assignment of a contract by a corporation is sufficiently shown where it appears that it was signed by the secretary, who was authorized to make it, and that it and a lease were parts of the same transaction, and there was *prima facie* evidence of the valid execution of the lease; especially where the lease and contract were acquiesced in by the corporation, and hence valid as between the parties.

ASSIGNMENTS—VALIDITY. An assignment of a contract valid as between the parties is sufficient to pass the title to the property, as against the other party to the contract.

ASSIGNMENTS—CONTRACTS ASSIGNABLE. A contract whereby a fruit preserving company sold to a wholesaler for future delivery a specified number of cases of jelly and jam subject to approval, and guaranteed under the pure food laws, is assignable, where it specified no particular manufacturer, brand or label.

ESTOPPEL—BY CONDUCT—VALIDITY OF ASSIGNMENT. The acceptance, from an assignee, of goods sold, with knowledge that the contract had been assigned, estops the vendee from questioning the assignment.

[1]Reported in 129 Pac. 1081.

SET-OFF AND COUNTERCLAIM—AGAINST ASSIGNED CLAIMS—PERSONS ENTITLED—STATUTES—CONSTRUCTION. A claim against an assignor cannot be asserted by way of counterclaim against the assignee of an executory contract to sell goods for future delivery, on which nothing was due and which the assignee took while in the executory stage; in view of Rem. & Bal. Code, § 191, providing that any debtor may plead a counterclaim against an assigned debt, if held by him against the original owner, and Id., § 266, authorizing a set-off of any demand against the plaintiff which existed and belonged to defendant at the time of the suit, and against any assigned demand if it existed at the time of the assignment; since these statutes are *in pari materia*, and construed together do not authorize a set-off against the assignee of an executory contract, when both claims are not matured, and which could not have been asserted against the assignor prior to the assignment.

Appeal from a judgment of the superior court for Pierce county, Easterday, J., entered May 18, 1912, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action on contract. Affirmed.

*Hayden & Langhorne,* for appellant.

*James R. Chambers,* for respondent.

ELLIS, J.—This is an action to recover the purchase price of certain jellies and jams sold and delivered to the defendant, West Coast Grocery Company. The sale was by a written contract between the defendant and Vashon Island Preserving Company, a corporation, dated May 17, 1910, which contract it is claimed was sold and assigned to the plaintiff King, on June 11, 1910. It is admitted by both parties to this action that, at about that time, the officers and trustees of the Vashon Island Preserving Company leased its plant to the plaintiff, with the understanding that all of its existing contracts should be assigned to him, and that the lease and the assignment of the contract here in question were parts of one and the same transaction. The evidence shows without contradiction, that thereafter the plaintiff personally and at his own cost manufactured the goods and shipped

them to the defendant; that the cases and jars were marked "Vashon Island Preserving Company, J. W. King, Lessee," and that the invoices sent to the defendant were in the name of J. W. King, lessee. It is admitted that the defendant accepted and retained the goods, and there is no claim that they were not of the kind and quality contracted for, or that they were not of the full value agreed to be paid for them.

The defendant admitted the execution of the contract, admitted the receipt and retention of the goods, but denied the assignment of the contract, and interposed as a set-off or counterclaim damages claimed against the Vashon Island Preserving Company, on account of its breach of warranty in furnishing inferior goods to the defendant under a contract of the year before. The evidence shows that the goods sold under this last-mentioned contract had been received and paid for by the defendant some time prior to the making of the contract of May 17, 1910. The cause was tried to the court without a jury, and judgment was rendered in plaintiff's favor for $818.59. The counterclaim was refused. The defendant prosecuted this appeal.

The court, in order to avoid a retrial in the event of this court holding that the counterclaim should have been allowed, took evidence on the defendant's claim and made a finding thereon that the goods furnished by the Vashon Island Preserving Company under the contract of the year before were defective and damaged to the value of $162; that the plaintiff, on and after June 7, 1910, knew that defendant claimed the goods furnished under this first contract were unsalable, but had no knowledge of the extent of such claim of damage; that the defendant, at the time of its reception of the goods delivered to it by the plaintiff under the assignment of the second contract, well knew that they belonged to the plaintiff, but prior thereto had no knowledge of the assignment of the contract.

(1) The appellant first contends that neither the lease of the preserving plant nor the assignment of the contract

of May 17, 1910, was validly executed by the Vashon Island Preserving Company to the respondent. It is urged that both of these acts were void because there was no formal resolution of the board of trustees of the corporation authorizing either of them. There was no direct evidence that any formal resolution was ever passed, but both the president and secretary testified that both the lease and the assignment were authorized by the trustees. There was, however, direct evidence that no record was ever made of any such resolution, if any was ever passed. The company had three trustees, of whom the respondent was one. He was also president of the company. The lease, which is in evidence, was executed in the name of Vashon Island Preserving Company, by the respondent as its president and also as trustee, and by its secretary, and was attested by the corporate seal. It was also signed by the other two trustees. It was acknowledged by the president and secretary in the statutory form for corporate acknowledgments, the certificate reciting that both officers stated under oath "that they were authorized to execute said instrument, and that the seal affixed thereto is the corporate seal of said corporation." The lease itself recited that the corporation had caused its execution. In the absence of any evidence to the contrary, the evidence adduced must be held sufficient to establish *prima facie* the validity of the lease. *Gardner v. Port Blakely Mill Co.*, 8 Wash. 1, 35 Pac. 402; *Milton v. Crawford*, 65 Wash. 145, 118 Pac. 32; 4 Thompson, Corporations (1st ed.), § 5029.

The assignment of the contract was made by the secretary, who testified that he was authorized to make it. It is admitted that the lease and the assignment were parts of one and the same transaction. The *prima facie* establishment of the authorization of the lease was, therefore, some evidence that the transfer of the contract was also authorized. Moreover, it was shown that the trustees had at all times full knowledge of the transaction, knew that the contract was being performed by the respondent, and on two or three oc-

casions thereafter held regular meetings and did not in any manner question or disaffirm the transaction, but knowingly received its benefits in the rental paid by the respondent. These things were ample to prevent the Vashon Island Preserving Company from ever in any way questioning the authorization of either assignment or lease. *Dexter Horton & Co. v. Long*, 2 Wash. 435, 27 Pac. 271, 26 Am. St. 867; *Carrigan v. Port Crescent Imp. Co.*, 6 Wash. 590, 34 Pac. 148; *Glover v. Rochester-German Ins. Co.*, 11 Wash. 143, 39 Pac. 380; *Roberts v. Washington Nat. Bank*, 11 Wash. 550, 40 Pac. 225; *Anderson v. Wallace Lumber & Mfg. Co.*, 30 Wash. 147, 70 Pac. 247; *Rowland v. Carroll Loan & Inv. Co.*, 44 Wash. 413, 87 Pac. 482; *McKinley v. Mineral Hill Consol. Min. Co.*, 46 Wash. 162, 89 Pac. 495; *Russell v. Schade Brewing Co.*, 49 Wash. 362, 95 Pac. 327; *Livieratos v. Commonwealth Security Co.*, 57 Wash. 376, 106 Pac. 1125; *National Bank of Commerce v. Puget Sound Biscuit Co.*, 61 Wash. 192, 112 Pac. 265; *Starwich v. Washington Cut Glass Co.*, 64 Wash. 42, 116 Pac. 459; *Sesnon v. Lindeberg*, 66 Wash. 1, 118 Pac. 900. While these decisions, as pointed out by the appellant, rest largely upon the principle of estoppel as between the immediate parties to the transaction, still, if the contract here in question was assignable at all, evidence of any assignment sufficient to pass the title as between the parties to the assignment is all that can be required. It is merely a matter of proving title. *Kull v. Thompson*, 38 Mich. 685.

(2) But the appellant contends that the contract was not assignable without its consent. There can be no question as to the general rule that, in the absence of prohibition by statute or stipulation by contract, rights arising out of executory contracts are assignable whenever they would survive to the personal representative of the assignor. 2 Am. & Eng. Ency. Law (2d ed.), 1017, 1035; *Slauson v. Schwabacher Bros. & Co.*, 4 Wash. 783, 31 Pac. 329, 31 Am. St. 948; *Conaway v. Co-Operative Homebuilders*, 65 Wash.

39, 117 Pac. 716.  The exceptions to this general rule are
also well established.  It is often broadly stated, in varying
forms of expression, that, if the rights are coupled with
liabilities or if they involve a relation of personal confidence
or a personal service, they cannot be assigned.  4 Cyc. 22.
The difficulty is not one of mere definition.  It lies in the
application of these general principles to the given case.
Strictly speaking, almost every right arising under an ex-
ecutory contract has its corresponding liability.  To give
to the language of the first branch of the exception an abso-
lute sense would be to declare every executory contract non-
assignable.  As applied to sales of personal property for
future delivery, the liability, coupled with the right, must
be dependent upon some future dealing with the property
sold as between the parties, in order to render the contract
of sale nonassignable.

"When the contract is executory in its nature, and an as-
signee or personal representative can fairly and sufficiently
execute all that the original contractor could have done, the
assignee or representative may do so and have the benefit of
the contract."  *Devlin v. Mayor etc. of New York*, 63 N. Y
8, 17.

See, also, *In re Niagara Radiator Co.*, 164 Fed. 102.

The question in each case must turn upon the intention
of the parties.  In order to determine whether a given con-
tract falls within either branch of the exception, it is neces-
sary to consider the nature and purpose of the contract and
its terms and provisions.  The contract here in question was
as follows:

"Seattle, May 17, 1910.

"Sold to West Coast Grocery Company, Tacoma, Wash.,
for account and subject to approval of Vashon Island Pre-
serving Company,

350 Cases No. 3 Jelly, 4 doz. to case, per dozen.......90c
150 Cases No. 3 Jam, 4 doz. to case, per dozen........90c
Less 15% discount, Pack of 1910, October delivery.
Terms:  F. O. B. Tacoma, less 2% cash discount 10 days
from date of invoice.  The sellers guarantee all goods sold

under this contract to comply with the pure food law approved by congress June 30th, 1906.

> "Accepted, West Coast Grocery Co., Buyer.
> "By,        S. A. Nourse, Treas.
>             Bennington Burton, Broker.
>             Vashon Island Preserving Co.,
>                                         Seller.
> "By        J. W. King."

This is simply a sale of personal property for future delivery. There is no undertaking that the goods shall be manufactured by any particular person or corporation. The contract involves nothing of a personal nature, nothing from which it can be implied that performance by the preserving company alone was the inducement or of the essence of the contract, nothing involving a personal confidence. No particular brand or label or trade-mark is specified, no particular process of manufacture imposed, no future dealings of any kind with the property sold, as between the parties, contemplated. It is not a sale of fruits with an agreement to manufacture. It is a sale of a completed product for future delivery. The crucial point is that the appellant was required to pay no money until the goods were furnished of the kind and quality required by the contract. Such a contract, in the absence of stipulation to the contrary, is assignable by either party.

A contract in which one party agreed to sell, and the other to buy, all sound grapes containing a certain percentage of saccharine matter, to be grown from certain vines for a period of ten years, was held by the supreme court of California, after a careful analysis of the authorities, assignable by the seller, upon the same principles herein announced. *La Rue v. Groezinger*, 84 Cal. 281, 24 Pac. 42, 18 Am. St. 179.

A contract for the drilling of an oil well has also been held by the supreme court of Pennsylvania assignable by the contractor. The court said:

"The personal performance of the work by the legal plain-
tiff could not have been contemplated by the parties at the
time the contract was made.  The work of necessity required
the labor and attention of a number of men, and it does not
appear that because of his knowledge, experience or pecu-
niary ability, or for any other reason, Galey was especially
fitted to carry it on.  There is nothing of a personal nature
about it, and its personal performance by him was not the
inducement nor of the essence of the contract.  The contract
was assigned to Smith Bros., the use plaintiffs, and the work
under it was done by them, with the knowledge of the defend-
ant from the beginning." *Galey v. Mallen,* 172 Pa. St. 443,
33 Atl. 560.

The same principles are exemplified in the following deci-
sions: *Janvey v. Loketz,* 122 App. Div. 411, 106 N. Y.
Supp. 690; *Anse La Butte Oil & Mineral Co. v. Babb,* 122
La. 415, 47 South. 754; *Poling v. Condon-Lane Boom &
Lum. Co.,* 55 W. Va. 529, 47 S. E. 279.

It is useless to review the vast number of authorities cited
by the appellant in this connection, since the principles here
involved are not questioned, and we conceive that a discrimin-
ating application of these principles to the contract before
us demonstrates its assignability.  Moreover, the goods were
accepted by the appellant as meeting the contract.  They
were at least retained by it with knowledge of the assign-
ment.  While the evidence was conflicting as to whether or
not the respondent notified the appellant of the assignment
shortly after it was made, it is not denied that the invoices
gave such notice when the goods were delivered.  The court
would have been justified in finding that the appellant was
estopped to question the assignment.

(3)  The third contention is that, even conceding that the
contract was legally assignable and was validly assigned,
still the appellant's claim against the preserving company
was a valid set-off or counterclaim against the assignee, King.
The trial court held that the appellant could not set off its
claim against the amount due respondent on the assigned

contract, because that contract was, at the time of the assignment, an executory contract upon which nothing was then due, and hence the appellant's claim was not such a demand as might have been set off against the respondent's assignor while the contract belonged to it. The appellant contends that this was error. It is urged that the case of *Boston Tow Boat Co. v. Sesnon Co.*, 64 Wash. 375, 116 Pac. 1083, is decisive of this question. In that case the defendants, as ship lighterers, had, prior to September, 1907, agreed with the charterers of a vessel to collect and turn over all freight charges, less compensation, for lighterage. We held that the defendants might set off a prior indebtedness to them from the charterers for failure to deliver coal and grain shipped in their care, in an action for freights collected by the defendants, brought by the owners of the vessel upon abandonment of the vessel by the charterers in September, 1907, the charterers agreeing as a part of the agreement of abandonment to collect and hold in trust for the owners the proceeds of the voyage then about to begin. The lower court allowed the set-off, on the express ground that the defendants had no notice of this agreement, and that, as between the defendants on the one hand and the plaintiff and the charterers on the other, the money collected by the defendants and by them retained was the interest of an undisclosed principal. Moreover, the actual assignment to the plaintiff of the claim for this freight was, as the lower court in effect found, made after the freight was collected. This finding does not appear in the opinion, but that it was made is conceded in the briefs which we have examined, and our decision states that the facts found by the court were justified by the testimony.

The actual question here involved, though raised in the briefs, was not discussed in the opinion. Whether a matured claim against the assignor of an immature claim may be set off in an action by the assignee brought after the assigned claim has matured, has never been decided by this court.

The question is one of statutory construction. Section 191, Rem. & Bal. Code, gives to the assignee of any judgment, bond, specialty, book account, or other chose in action the right to sue thereon in his own name, with a proviso "that any debtor may plead in defense a counterclaim or an off-set if held by him against the original owner, against the debt assigned," save as against negotiable paper assigned before due. This section does not attempt to define the time within which the right of set-off may be asserted, but was manifestly intended only to preserve the right of set-off. There is, however, force in the view that the words "against the *debt* assigned" mean against a claim matured at the time of the assignment. The time within which a set-off or counterclaim may be asserted is specifically defined by two subsequent sections. Section 265 defines a counterclaim generally, and does not specifically refer to assigned claims, and must be held to apply only to claims as between the original owners. This is shown by the next section, 266, which expressly fixes the time when the set-off or demand may be allowed as against an assigned claim. It is as follows:

"The defendant in a civil action upon a contract expressed or implied, may set off any demand of a like nature against the plaintiff in interest, which existed and belonged to him at the time of the commencement of the suit. And in all such actions, other than upon a negotiable promissory note or bill of exchange, negotiated in good faith and without notice before due, which has been assigned to the plaintiff, he may also set off a demand of a like nature existing against the person to whom he was originally liable, or any assignee prior to the plaintiff, of such contract, provided such demand existed at the time of the assignment thereof, and belonging to the defendant in good faith, before notice of such assignment, and was such a demand as might have been set off against such person to whom he was originally liable, or such assignee while the contract belonged to him."

These sections are statutes *in pari materia,* and were all passed by the territorial legislature of 1854, and were re-

tained in the code of 1881. They are not necessarily in con-
flict, and hence, under the rules of construction, they must
be construed together so as to effectuate the purpose of all.
Section 266 is capable of no other construction than that a
set-off can only be allowed as against an assigned demand,
when it could have been asserted against such demand at the
time of the assignment and as against the original owner.
Obviously, there can be no set-off against an executory con-
tract while it remains in the executory stage. Performance
only could ripen such a contract into a valid demand. There
was, at the time of the assignment, no debt or demand against
which the set-off could then be made. We are constrained to
hold that the claim of the appellant was not a proper sub-
ject of set-off against the respondent's demand arising on the
contract subsequent to the assignment, because it was not
such as against the respondent's assignor while it held the
contract in the executory stage. There was never a time
while the contract was held by the Vashon Island Preserving
Company when the appellant's claim could have been set off
against it. The assignment, therefore, defeated the right
to set-off as against the assignee King. The construction
which we place upon these three sections of the statute is
the only one which harmonizes them and yet gives a legiti-
mate scope and accords a meaning and purpose to each. Any
other construction would effect a repeal of § 266 by impli-
cation, when no such implication is necessary. This is never
permissible. So construing the statute, the authorities are
overwhelming to the effect that a claim against the assignor
cannot be asserted against the assignee of an executory con-
tract who took it while in the executory stage, in the absence
of some showing of insolvency of the assignor. In this case
there was no such showing.

"When two opposing debts exist in a perfect condition at
the same time, either party may insist upon a set-off. If,
therefore, the holder of such a claim already due and payable
assign the same, and the debtor at the time of this transfer

holds a similar claim against the assignor, which is also then due and payable, he may set off his debt against the demand in the hands of the assignee. If, however, the assignment is made before the opposing demand becomes mature, and the latter does not thus become actually due and payable until after the transfer, the debtor's right of set-off is destroyed by the mere fact of the assignment, and no notice thereof to him is necessary to produce that effect." Pomeroy, Code Remedies (3d ed.), § 163.

See, also, *Bradley v. Thompson Smith's Sons*, 98 Mich. 449, 57 N. W. 576, 39 Am. St. 565, 23 L. R. A. 305; *Koegel v. Michigan Trust Co.*, 117 Mich. 542, 76 N. W. 74; *Henderson v. Michigan Trust Co.*, 123 Mich. 688, 82 N. W. 510; *Kull v. Thompson, supra; Fuller v. Steiglitz*, 27 Ohio St. 355, 22 Am. Rep. 312; *Richards v. La Tourette*, 6 N. Y. Supp. 937; *Beckwith v. Union Bank*, 9 N. Y. 211; *Patterson v. Patterson*, 59 N. Y. 574, 17 Am. Rep. 384; *Jordan v. National Shoe and Leather Bank*, 74 N. Y. 467, 30 Am. Rep. 319; *Greene v. Darling*, Fed. Case, No. 5765; *Stitt v. Horton*, 165 Ind. 555, 76 N. E. 241; *Campbell v. Equitable Life Assur. Soc.*, 130 Fed. 786. No fraud in the assignment was established. The respondent took an executory contract, performed it at his own expense, and is entitled to his pay from the appellant, who accepted the goods as meeting the contract.

The judgment is affirmed.

CROW, C. J., MAIN, MORRIS, and FULLERTON, JJ., concur.