[No. 9325. Department Two. July 3, 1911.]

MATT STARWICH et al., Appellants, v. WASHINGTON CUT GLASS COMPANY, Respondent.[1]

LANDLORD AND TENANT—RENTS—LEASE — ACCEPTANCE. A lessee is liable for rent upon accepting a lease, although it did not go into possession or sign the lease.

CORPORATIONS—CONTRACTS—ACCEPTANCE OF LEASE—LANDLORD AND TENANT. A corporation accepts a lease and is liable for the rent, where the trustees authorized the officers to enter into it, the lease was delivered to the officers, who accepted it on behalf of the corporation, and directed that rents received from tenants in possession be applied upon the rent reserved in the lease.

CORPORATIONS—OFFICERS — AUTHORITY — EVIDENCE. Authority to the president and secretary of a corporation to enter into a lease may be shown by parol as well as by minutes of the board of trustees, where no minutes were necessary.

SAME—REQUIREMENTS OF BY-LAWS. A formal act of the trustees, required by the by-laws, is not essential to bind the corporation by a lease executed by the officers pursuant to the assent and previous authority of all the trustees, constituting all of the stockholders.

Appeal from a judgment of the superior court for King county, Main, J., entered December 3, 1910, upon findings in favor of the defendant, after a trial on the merits before the court without a jury, in an action on contract. Reversed.

[1]Reported in 116 Pac. 459.

*McBurney & Cummings, H. McC. Billingsley,* and *C. C. Cutler (Walter S. Fulton,* of counsel), for appellants.

*William R. Bell,* for respondent.

Morris, J.—Appeal from a judgment of dismissal in an action to recover for breach of a lease. Appellants were owners of certain premises in Seattle. The respondent company was organized in October, 1907, to engage in the manufacture of cut glass. It desired to obtain suitable quarters for that purpose. Appellants' building was suggested, and negotiations were entered into to obtain same, resulting in an offer from appellants to lease for a term of three years at $75 per month in advance. This offer was submitted to a meeting of the trustees of the respondent, held on October 21, 1907, and was accepted, providing the building was found suitable for the required purposes. A committee of three was appointed to examine the building. Upon such examination the building was found to be satisfactory, and measurements of it were taken and handed to one of the trustees, who was to purchase necessary machinery in the east. This condition was reported to the president and secretary of the company, who thereupon requested appellants to prepare and submit a form of lease, which was done, and the submitted form being satisfactory to the president and secretary, appellants were requested to formally execute the lease and return it to the officers of the company. This required some time as the appellants were residents of different places. However, about the last of December, 1907, the lease, having been formally executed, was delivered to the president and secretary of the company, who accepted and received the same on behalf of the company. Subsequently demands for rent were made, which were not complied with, the president and secretary asking for time on account of the inability of the company to get things moving as they had anticipated. The lease was not returned to appellants, and they were informed that the same had been mislaid and

could not be found. The president and secretary of the company, however, continually asserted their acceptance of the lease, and their intention to pay the rent as soon as their financial situation would permit.

At the time of the execution of the lease, the premises were partly occupied and paying a small rental. These tenants remained in possession, and the agent of appellants, who had formerly collected the rent, was instructed by the president of the company to continue doing so and apply the proceeds in payment of the rent reserved in the company's lease. This was done. February 20, 1908, the president of the company wrote the vice president and member of the board of trustees, who had gone east to further promote the business of the company, saying, among other things: "We have entered into a lease for the brick building in South Seattle of which you have the measurements, at $75 per month, from January 1, 1908, from which we are only getting $20 per month revenue at the present time." The demands for rent continued and became more insistent, when in March the treasurer of the company discovered that the lease had not been signed by the company and, refusing to pay for that reason, negotiations were broken off and this suit followed. Subsequently appellants filed an amended complaint in which they recite a reentry and a reletting of the premises, and seek now to recover the difference between the rent reserved in the lease and the rental value of the premises.

The lower court denied any liability upon the lease, as we gather from the findings, for the reasons, (1) that the lease was not signed by the lessees; (2) that the lease had never been formally submitted to, nor accepted by, the trustees of respondent; (3) that no possession had been taken of the premises, nor other action by the trustees showing a ratification. These are the questions now submitted on the appeal. There were five stockholders in this company, and the five stockholders were elected five trustees. The trustees then elected one of their number president, another vice presi-

dent, a third secretary, a fourth treasurer; the fifth trustee expected to act as manager when the company commenced active operations. With these determinative facts in mind, we come to the discussion of the legal phases suggested.

It is well established that it is not essential to the validity of a lease that it be signed by the lessee, providing the lessee accepted the lease and acts thereunder, which acceptance is generally shown by taking possession or the payment of rent. Underhill, Landlord and Tenant, § 232; McAdam, Landlord and Tenant, § 47; Tiffany, Landlord and Tenant, § 27. It is also held that the lessee is bound where he accepts the lease, even though his acceptance be not established by possession. *McFarlane v. Williams*, 107 Ill. 33; *Doxey's Estate v. Service*, 30 Ind. App. 174, 65 N. E. 757; *Midland R. Co. v. Fisher*, 125 Ind. 19, 24 N. E. 756, 21 Am. St. 189; *Schmucker v. Sibert*, 18 Kan. 104, 26 Am. Rep. 765; *Guthrie v. Anderson*, 47 Kan. 383. Underhill, Landlord and Tenant, § 242, asserts that, inasmuch as the delivery of a lease may be a benefit to the lessee, there is a presumption of acceptance, and this presumption may be raised by a retention of the lease.

Without committing ourselves to this last doctrine, it is plain to us that there was an acceptance of this lease by the president and secretary of this company. Every act upon which acceptance could be predicated is present, except the formal signing of the lease. They admit their liability for the rent and promise to pay the same. They direct the collection of the rent from the tenants in possession of a portion of the premises, and direct it to be credited upon the rent to be paid by the company. And as the vice president of the company, on account of his absence, is the only officer of the company to whom these facts are not known, the president writes him a letter, giving him the information. This company did not proceed further than its organization and the negotiations concerning this lease. As we have indicated, it was unable to rise above the financial stress of the time of its

organization. It held no meeting subsequent to October 21, 1907. It awaited the result of its vice president's efforts in the east, and when they failed, it gave up the ghost. But that did not deliver it from the burden of its contracts, nor create an excuse upon which it can escape liability upon this lease. Conceding all that its president and secretary have done in the acceptance of this lease, respondent seeks to escape liability in its contention that no meeting of its trustees is shown in which this lease was formally accepted; nor is any action shown on the part of the trustees obligating the company to pay the rent. It is shown, however, that at the meeting of the trustees October 21, the president and secretary were authorized to execute a lease upon the terms then and there suggested. This does not appear in the minutes of that day's meeting. The secretary says, in moving his office about that time, the minutes were lost. It is immaterial whether they were or not. No minutes were necessary to the conferring of such authority, and the acts of the trustees could be shown by parol as well as by the minutes. *Handley v. Stutz*, 139 U. S. 417. A previous authority by the trustees to the president and secretary to execute a lease would be as binding as any subsequent ratification of such an act.

It is again strongly urged that the provisions of the by-laws of the company only permit the company to be bound by the formal act of its trustees. By-laws are for the protection of the stockholders, and act as a restraint to prevent the officers of a corporation from exercising more or greater authority than that conferred. In the case before us the stockholders were all trustees, and all officers, save one. They all took part in what was done. They were not attempting to represent others with or without authority. They represented themselves. The negotiations for the lease were submitted to all of them. They knew its terms and conditions, and authorized its execution. They investigated the building and found it satisfactory. They took meas-

urements of the building, and forwarded them to the trustee in the east to aid him in the selecting of suitable machinery. They do not question their liability for rent until it is discovered the lease is not signed. We might add, as is said in *Solomon Solar Salt Co. v. Barber*, 58 Kan. 419, 49 Pac. 524:

"What the rights of dissentient stockholders might be in such case, we need not and do not consider; nor need we consider what the corporation, the legal entity itself, might do in behalf of dissenting stockholders. In this case, there is neither officer nor owner to now dissent from that to which he had not previously given assent."

The previous assent of these stockholders, acting as trustees, to the negotiations for this lease, and their authority to the president and secretary to execute it, are as binding upon them and the corporation itself as any subsequent ratification could be. Morawetz, Private Corporations, § 228; *Union Nat. Bank v. Shoemaker*, 68 Mo. App. 592.

We therefore hold that there was an acceptance of the lease by the respondent, and for that reason, the judgment is reversed.

DUNBAR, C. J., ELLIS, CROW, and CHADWICK, JJ., concur.