## EAGLE INDEMNITY CO. v. UNITED STATES.

Circuit Court of Appeals, Fourth Circuit.

October 18, 1927.

No. 2630.

1. Customs duties ⨺86—Collector of customs had authority to require master of foreign vessel entering port in distress to furnish bond before clearance (Tariff Act 1922, §§ 435, 441, 442 [19 USCA §§ 245, 251, 252]; Customs Regulations, § 1118).

Under Tariff Act 1922, §§ 435, 441, 442 (19 USCA §§ 245, 251, 252), and Customs Regulations, § 1118, collector of customs had authority to require from master of foreign vessel, entering ·port in distress, a bond as condition for clearance.

2. Bonds ⨺58—Bond, with severable indemnifying and forfeiture conditions, can be enforced as to conditions of forfeiture.

Where conditions of bond are severable, some of them indemnifying, and some conditions of forfeiture, bond can be enforced as to conditions of forfeiture.

3. Customs duties ⨺86—Condition of bond furnished by master of foreign vessel entering port in distress, requiring proper delivery of goods, held one of forfeiture.

Conditions of bond furnished United States by master of foreign vessel entering port in distress, to effect that goods shown in manifest to be destined for foreign ports would be landed at stated destination and proof thereof furnished, *held* a condition of forfeiture and enforceable as such.

4. Customs duties ⨺86—Violation of agreement in bond executed by master of foreign vessel entering port in distress to deliver goods at foreign port completed forfeiture.

Where government required master of foreign vessel entering port in distress to execute bond guarantying delivery of goods at foreign ports in accordance with manifest of vessel, violation of the agreement as set out in bond completed the forfeiture, without any obligation on government to prove specific damages.

5. Customs duties ⨺86—Government may recover full penalty of bond furnished by master of foreign vessel entering port in distress, on proving failure to furnish required certificate.

Where master of foreign vessel entering port in distress furnished bond, containing agreement to deliver goods at foreign port in accordance with manifest, the government is entitled to recover full penalty named therein merely on proof of failure to furnish landing certificate as required.

6. Customs duties ⨺86—Affidavit on information and belief that foreign vessel entering port in distress was forbidden to land cargo in accordance with agreement of bond held insufficient.

Where bond furnished by master of foreign vessel entering port in distress contained agreement that goods shown in manifest to be destined for foreign port would be so delivered and proof thereof furnished, affidavit of third party on information and belief, that failure to furnish landing certificate was due to fact that vessel was forbidden to land cargo at stated destination, was insufficient.

In Error to the District Court of the United States for the Eastern District. of Virginia, at Norfolk; D. Lawrence Groner, Judge.

Suit by the United States against the Eagle Indemnity Company. Judgment for the United States (18 F.[2d] 135), and defendant brings error. Affirmed.

Cleaton E. Rabey and John S. Rixey, both of Norfolk, Va. (R. Baldwin Myers, of Norfolk, Va., on the brief), for plaintiff in error.

Luther B. Way, Sp. Asst. U. S. Atty., of Norfolk, Va. (Paul W. Kear, U. S. Atty., of Norfolk, Va., on the brief), for the United States.

Before PARKER and NORTHCOTT, Circuit Judges, and ERNEST F. COCHRAN, District Judge.

NORTHCOTT, Circuit Judge. On February 24, 1924, the Cuban sailing vessel, G. H. Murray, was towed into Norfolk harbor in distress by the British steamer Ceuta, and claimed and was granted the status of a vessel in distress. On February 26, 2 days later, the customs officials of the port gave the boat permission to remain in port 20 days to make repairs. On March 13, 1924, the permission was extended, and again on·March 29, 1924, another extension was granted, both times upon the request of the boat.

A formal entry was made by the Murray on February 24, 1924, two days after her arrival at Norfolk. The Murray's cargo con-

sisted of 2,182 cases of spirituous liquors and 6,750 cases of alcohol, as shown by her manifest, and she was alleged to be on a voyage from Havana, Cuba, to St. Pierre, Miquelon, a foreign port under the jurisdiction of the republic of France. While at Norfolk, the Murray was attached for salvage in admiralty proceedings by the master of the steamship Ceuta, and the United States marshal, acting solely in the said admiralty proceedings, put guards on her. In this litigation the United States had no interest, and at no time while in the port of Norfolk did the customs officials take any proceedings against the Murray, other than those usual with boats under similar circumstances.

While at Norfolk, the customs officials found on board the Murray a large package of labels containing the following words: "Straight Whisky, the Whisky without a Headache, Trade. Kentucky G. R. Bourbon, S. M. Mark, Green River. Bottled by Green River Distilling Co., Owensboro, Kentucky. Contents, One Quart. Eminence Distillery Co., Distillers. Distillery No. 107, Fifth District, Kentucky." After the completion of the repairs on the Murray, but before the vessel was permitted to leave to continue her voyage, the collector of the port at Norfolk required the execution of a bond, under the Tariff Act of 1922, before she was allowed to depart.

Bond was executed by Felipe Zameza, master of the schooner, as principal, and Eagle Indemnity Company, as surety, in the penal sum of $10,000. Bond was executed in the following words:

"Vessel Bond (Single Entry).

"(For lading or unlading at night, holidays, etc., to land equipment for repair, etc., to discharge on lighters, or outside of docks, to pay legal charges, penalties, etc., to land cargo in other districts or foreign port, to produce export manifests, declarations.)

"Know all men by these presents, that Felipe Zameza, master of the Cuban schooner G. H. Murray, of Havana, Cuba, as principal, and Eagle Indemnity Company of New York City, N. Y., as sureties, are held and firmly bound unto the United States of America in the sum of ten thousand dollars, for the payment of which we bind ourselves, our heirs, executors, administrators, successors, and assigns, jointly and severally, firmly by these presents. Witness our hands and seals this 2d day of April, 1924.

"Whereas, the Cuban schooner G. H. Murray, from Havana, Cuba, has arrived or is expected to arrive at the port of Norfolk, Virginia, on Feb. 24, 1924, to enter and clear and to discharge and take on cargo and passengers pursuant to the provisions of sections 4197 and 4200 Revised Statutes, the Act of February 13, 1911, the Wireless Act of June 24, 1910, and the amendments thereto, and other acts and regulations:

"Now, therefore, the conditions of this obligation are such that—

"(1) If the said principal shall pay to the collector of customs of the said port promptly on demand the sums chargeable under law and regulations in conformity therewith for services performed for said vessel by customs officers, and shall promptly pay any dues, charges, penalties, or other sums legally due the United States from any master or owner of said vessel on account of said vessel;

"(2) And if the said principal shall save the United States and the said collector harmless from all losses and liabilities which may occur by reason of the granting of any permit or license to said vessel to discharge or take on cargo, equipment, baggage, ballast, fuel, or other article at night, on Sundays, or holidays, or to land, place, or store the same on lighters or on piers, landing places, or on spaces adjoining thereto, and if same shall not be removed therefrom until proper permits have been presented;

"(3) And if all articles shown on the manifest of said vessel to be destined for other United States customs ports and for foreign ports, are landed at the destination stated and proof thereof is furnished the said collector in the form and within the time required by law and regulations or any lawful extension thereof;

"(4) And if complete manifests of all cargo of said vessel destined for foreign ports or noncontiguous territory of the United States, and shippers' export declarations and pro forma declarations therefor are delivered to the said collector in the form and manner and within the time prescribed in sections 4197 and 4200 Revised Statutes, Treasury Decision No. 35969 of December 14 (16), 1915, and other laws and regulations relating thereto;

"Then this obligation shall be void; otherwise, it shall remain in full force and effect. Felipe Zameza, Master G. H. Murray. [Seal.] Eagle Indemnity Company, by W. G. Brinkley, Attorney in Fact. [Seal.]"

After leaving port of Norfolk, the Murray, as is shown by the evidence, lay off Cape Henry for at least 2 days, without pro-

ceeding on her voyage, although the wind was a favorable one, and on June 10, more than 2 months later, was found by the Coast Guard vessel Ossipee, anchored off the coast of Maine, near Matinicus Rock, about 78 miles from the city of Portland, her name covered with canvas. The voyage from Norfolk to St. Pierre could be made in favorable weather in a week or 8 days. The value of the Murray's cargo was considered by the customs officials to be $35,000. If the cargo had been imported into the United States for medicinal purposes, the duty thereon would have been $360,000; and if the cargo had been imported into the United States for industrial purposes, the duty would have been about $36,000, exclusive of the internal revenue tax, which under such circumstances is also collected by the collector of customs.

No landing certificate or other evidence of the landing of the Murray cargo at St. Pierre being produced with the collector of customs at the port of Norfolk, and nothing further having been heard from the boat, on July 14, 1925, the government of the United States instituted this action at law in debt in the United States District Court for the Eastern District of Virginia, asking judgment for the full penalty of the bond. The defendant the Eagle Indemnity Company demurred to the declaration. The demurrer was overruled, and the defendant Indemnity Company filed three special pleas. Evidence was taken and the case submitted to the court without the intervention of a jury, and judgment was given in favor of the United States for the full penalty of the bond, with interest from the date of judgment, from which judgment of the District Court the Eagle Indemnity Company sued out this writ of error.

The declaration charges breach of the third condition of the bond, in that the cargo of the Murray was not landed at the port of St. Pierre, and in that there was not furnished within 6 months from the date of exportation to the collector of the port of Norfolk, Va., the proof required in the third condition of the bond as to such landing. There is no allegation of a breach of any of the other conditions of the bond in the declaration. No evidence was offered in the trial on behalf of the government as to where the cargo was landed, and no evidence whatever was offered on behalf of the defendant.

The only thing in the record tending to show what became of the vessel's cargo is special plea No. 3, filed by defendant, which is as follows:

"That no merchandise in the declaration mentioned was landed in the United States from said vessel G. H. Murray. That no part of the cargo of the said vessel G. H. Murray in the declaration mentioned was landed in the United States of America from said vessel G. H. Murray; that said vessel G. H. Murray upon being released by the authorities of the port of Norfolk, continued its voyage to St. Pierre, Miquelon, where it arrived and attempted to land its said cargo in the declaration mentioned. That the duly constituted authorities of said Port of St. Pierre, Miquelon, forbade, refused and prevented the landing of said cargo at said Port of St. Pierre, Miquelon, due, as the defendant is advised, believes, and alleges to be the fact that said cargo was not French-made, against the wishes and intention and over the protest of the master of said vessel, and contrary to the instructions of the owners of said vessel and cargo.

"That thereupon, due to the action on the part of the authorities of the said port as aforesaid, in the said harbor of St. Pierre, Miquelon, the entire cargo of said vessel G. H. Murray was sold, and then and there transshipped and unladed from said vessel, G. H. Murray, and loaded on another vessel over which neither the master of said vessel G. H. Murray nor the defendant had any control. That the failure to furnish to the collector of the port of Norfolk, Va., a duly authenticated landing certificate from the authorities of the port of St. Pierre, Miquelon, was due solely to the fact that the said vessel was forbidden by the said authorities to land said cargo at said port of St. Pierre, Miquelon. And this the said defendant is ready to verify.

R. Baldwin Myers.
"Cleaton E. Rabey.
"John S. Rixey, P. D.

"State of Massachusetts, City of Boston— to wit:

"This day Samuel L. Ginsberg personally appeared before me, Belle Fisher, a notary public in and for the city and state aforesaid, in my city aforesaid, and made oath that he is authorized to make this affidavit, that he is familiar with the facts and things contained in the above plea, that he has read said plea, and that he believes the facts and things stated in the foregoing plea to be true.

"Given under my hand this 22d day of September, 1926.

"Belle Fisher, Notary Public. [Seal.]"

There is nothing in the record explaining who Samuel L. Ginsberg is, or what connec-

tion, if any, he had with the Murray, or what means he had, if any, of knowing the facts set out in the plea, which he verifies upon belief only. He was not offered as the witness in the case, and no opportunity was given to examine him.

Three points are raised on behalf of the Indemnity Company, as follows: First, is the bond to be considered as a forfeiture bond or a bond for indemnity? Second, in either case, is the government entitled to recover the full penalty of the bond merely upon proof of the failure to furnish the landing certificate, required by article 1118, Custom Regulations 1923? And third, is the production of the affidavit of Samuel L. Ginsberg a compliance with condition No. 3 of the bond?

Several other points were raised on behalf of the Indemnity Company in the court below, with respect to the authority of the collector to require the bond given, and with respect to the fact that the bond was given under duress, but these points have apparently been abandoned by the Indemnity Company here.

[1] An examination of Tariff Act 1922, §§ 435, 441, and 442 (19 USCA §§ 245, 251, 252), and section 1118 of the Custom Regulations, seems to show conclusively the authority of the collector to require the bond from the master of the Murray, and in United States v. Mora, 97 U. S. 413, 24 L. Ed. 1013, it is clearly held that a bond given under similar circumstances was not given under duress, and there Mr. Justice Bradley said: "If the shipper chose to give the bond in order to get his goods cleared, it was a voluntary act on his part; and what ground has he or his sureties to complain?"

As to whether or not the bond in this case is a forfeiture bond, or an indemnifying bond, there seems to be some question. As to conditions 1 and 2, the bond seems clearly to be an idemnifying bond. As to condition 3, it seems equally clear to us that it is a forfeiture bond. The question then arises whether a bond may be an indemnifying bond with respect to some of its conditions, and a forfeiture bond with respect to other of its conditions.

[2] In United States v. Mora, supra, it is said: "Where two conditions of a bond are severable, and one of them is good and the other not sustainable, the bond can be enforced as to the good condition." Therefore, if the conditions of a bond are severable, and some of them indemnifying and some conditions of forfeiture, the bond can be enforced as to the conditions of forfeiture. The only condition declared upon here is the third condition.

Bonds conditioned similarly to the third condition in this bond have been held to be forfeiture bonds by the Supreme Court of the United States in a number of cases. Clark v. Barnard, 108 U. S. 436, 2 S. Ct. 878, 27 L. Ed. 780; United States v. Montell, Taney, 47, 26 Fed. Cas. 1293; United States v. Dieckerhoff, 202 U. S. 302, 26 S. Ct. 604, 50 L. Ed. 1041.

In the latter case an able discussion of this question will be found by Mr. Justice Day. There an importer, who had been withdrawing certain merchandise from a custom house before payment of duties thereon, gave a redelivery bond for double the value of the package, conditioned for the return of the package unopened. Default was made in this condition, and the government sued for the full penalty of the bond, and there, as here, the defense was interposed that the government was only entitled to recover such damages as it had proven. The court said:

"In carrying out this purpose we hold the law permitted the taking of such a bond as was given in this case, providing that, if the party did not return the package required, he should pay double the amount of the value thereof. We think such undertaking, for this manner of discharging this duty, or paying the value stipulated, was intended to and does relieve the government from the necessity of showing any actual damage or loss. It is suggested that the government may prove the damages sustained possibly by the testimony of informers or of those who packed the merchandise before shipment, and in other ways. But in our opinion it was the purpose of this statute, and the bond executed in the case, to dispense with the necessity of resort to this method of showing damages, and to fix double the value of the package ordered to be returned, as a definite sum to be paid for the nonfulfillment of the statutory duty. In such cases the recovery is for the stipulated sum, and is not limited to the damages actually proven."

In O'Kane v. Lederer (D. C.) 4 F.(2d) 418, the rule is laid down that "the question is always one of construction, having regard to the entire statute, the governmental regulations framed to carry out the statute, and the language of the bond."

While it is rarely done, we think it proper in this case in addition to this, to take into consideration the circumstances and conditions surrounding the taking of the bond. U. S. v. American Surety Co., 200 U. S. 197, 26 S. Ct. 168, 50 L. Ed. 437. The government undoubtedly had in view the prevention of the violation of its laws prohibiting importation of alcohol or alcoholic liquors. It is

unreasonable to presume that, after allowing the Murray the freedom of its waters and harbors, while laden with a prohibited and contraband cargo, she would be allowed to go upon the security of a bond that would require the United States to keep the vessel under surveillance until it had discharged its cargo, a course impossible of being pursued.

As to where the Murray went or what she did with her cargo would of necessity be known only to the master and crew of the vessel, and it is not reasonable to presume that the United States government would enter into such an undertaking, solely upon the security of an indemnifying bond requiring proof of specific damages. The government had the right to take every precaution possible against the violation of its laws, and against its being defrauded of its customs duty. The measure of damages to the government for the violation of its laws, if any, could not be estimated in dollars and cents. The damage for the failure to present the landing certificate is not computable.

It is strongly urged on behalf of the defendant that the recent case of the United States v. Zerbey, 271 U. S. 332, 46 S. Ct. 532, 70 L. Ed. 973, is authority for their contention. There Mr. Justice Sanford says: "The case now presented is not that of a bond executed to the government in a specified penal sum prescribed by statute and intended as a fixed penalty imposed for a breach of a statutory duty, which is forfeited in its full amount by a breach of the condition irrespective of the actual damage thereby caused the government"—and quotes approvingly the Dieckerhoff Case. In passing upon the demurrer in this case the learned judge below ably discusses and says:

"In the Zerbey Case, supra, in which it was held that no recovery could be had except upon proof of damage, the bond, as well as the statutory authority for it, was essentially different from the bond sued on here and that enforced in the Dieckerhoff Case, as is apparent from the opinion. The bond there was given in order to secure a permit to sell distilled spirits for other than beverage purposes, and was conditioned that the principal should fully and faithfully comply with all the requirements of the laws of the United States respecting the sale and use of distilled spirits, etc. In pursuance of authority granted by the act, the Commissioner of Internal Revenue had prescribed the terms and conditions of the bond, and had adopted and issued two forms—one to be executed by corporate or personal sureties;

the other, by the deposit of collateral. The conditions of the two forms were not identical. In the case of the surety bond the condition was to comply with the laws of the United States, etc. In the case of the collateral bond the condition was that upon default the collateral so deposited might be sold and the proceeds applied to the payment of any internal revenue taxes, interest, or penalty which might be due. The decision was to the effect that the two bonds were for an identical purpose, and that the condition in the latter should be read into the former, and that, therefore, under the very terms of the bond itself, the obligation was discharged upon the payment of taxes, interest, penalties, etc., in the event of breach.

"There is no such condition in the bond in question here. As has already been said, its two conditions were not to land the merchandise and to furnish evidence of that fact by showing its carriage to destination. It is not claimed in the declaration that the merchandise was in fact landed in the United States, but it is claimed that it was not carried to destination, and that by reason of this fact the contract has been breached, and the United States is under no obligation to ascertain what was its final delivery place, but is entitled to the full penalty."

In the case of United States v. Rubin (D. C.) 233 F. (2d) 126, the bond sued on was given by friends of an immigrant, who could not be received in this country, and was conditioned that they would care for him while awaiting deportation. The bond contained numerous conditions, only one of which was alleged to have been breached. There the court said: "It now appears as a trial fact that damages, although real, are not such as can be admeasured." And in that case it is held that the bond was a forfeiture bond, and that the government should recover the full penalty without proof of specific damage.

In United States v. Detroit Fidelity & Surety Company (Eastern District of New York, 1923), the court said:

"I find against the defendant on each of those contentions. I find that there is an obvious consideration in the requirement on the part of our government that the ship should proceed to the particular port where her papers indicated that she was going. I find this one of the steps that it might be necessary for our executive department to take to protect itself. If the release of the vessel had been general, it being loaded with a cargo of liquor, it is obvious the department might then be required to take other precau-

tions against landing it at other places, and there was the specific requirement that it proceed to a definite and specific place so as to relieve the government of espionage at other points.

"Then as to the amount of the damage. This bond is not given in contemplation of an inquiry of a matter of dollars and cents. How much damage is done to this country by the importing into this country of a gallon of intoxicating liquor, there is no possible way of estimating, no way of reducing it to dollars and cents. The obligation of the bond is an absolute one, to compel the strict performance of the contract and agreement, and when the contract and agreement is violated then the whole of the bonds become absolute."

[3] It is our opinion that condition 3 of the bond in this case is a condition of forfeiture and comes under the class of bonds held to be forfeiture bonds, as in the Dieckerhoff Case, rather than the class of bonds held to be indemnifying, as in the Zerbey Case.

[4] The government had the right to protect itself in requiring the cargo to be delivered at the place indicated in the ship's papers, and to require proof of such delivery in the manner specified in the bond and regulations. The obligation of the bond is absolute, and the violation of the agreement, set out in the bond, completes the forfeiture, without any obligation upon the government to prove specific damage. Default is clearly shown in this case.

[5] As to the second point raised by the defendant, it is clear that, if the bond is a forfeiture bond, the government is entitled to recover the full penalty, merely upon proof of failure to furnish the landing certificate required. The amount of duty on the cargo, had the necessary steps been taken to have the cargo imported for medicinal or industrial purposes, in either event, would have been much more than the penalty named in the bond.

[6] Upon the third point raised by the defendant, as to the production of the Ginsberg affidavit, being a compliance with condition No. 3 of the bond, we take it that this contention is not made seriously. This affidavit only appears in the record as part of special plea No. 3. This plea was not filed until October, 1926, more than two years after the giving of the bond, and more than a year after the bringing of this suit. The affidavit is not introduced in the evidence in the case, nor was any explanation made as to who Ginsberg was, or why he was not produced as a witness. It in no way complies

with the proof required under the terms of the bond, and would not be considered proof in its present form in the absence of any requirement.

There being no error, the judgment of the District Court is affirmed.