## COUNTY COUNCIL FOR MONTGOMERY COUNTY ET AL. *v.* LEE

[No. 122, September Term, 1958.]

*Decided February 19, 1959.*

The cause was argued before HENDERSON, HAMMOND and HORNEY, JJ., and OPPENHEIMER, Judge of the Supreme Bench of Baltimore City, specially assigned.

*Rourke J. Sheehan, Assistant County Attorney,* with whom was *Alfred H. Carter, County Attorney for Montgomery County,* on the brief, for appellants.

*Basil L. Carr,* for appellee.

Horney, J., delivered the opinion of the Court.

The Circuit Court for Montgomery County, by its decree, *declared* that the clause—requiring the permittee to obtain the necessary easement for the construction, operation and maintenance of a storm drainage outlet—set forth in the paving permit issued by Montgomery County (the County) to T. Girard Lee (Lee or the permittee) was invalid, and *ordered* that when the permittee had complied with all other terms and conditions of the permit, he and the surety on his performance bond should be released and discharged from all obligations under the permit and bond. The County appealed.

Lee, who was a developer and builder of homes in Montgomery County, undertook the development in 1954 of the subdivision known as "Randolph Farms" in the area of the Washington Suburban Sanitary District. In the course of the development he obtained a permit for and graded Galena Road—along which he had constructed about twenty-five homes—to intersect, at its north end, with the county maintained Randolph Road.

Later, in the summer of 1955, after the grading had been accomplished in accordance with the requirements of the County and the Washington Suburban Sanitary Commission (the WSSC), Lee applied for a permit to pave Galena Road and submitted therewith his proposed plans, including a storm drainage plan prepared by his engineers. The drainage plan provided for surface water to flow through a culvert under Randolph Road into an outlet—described as "Outlet W-1"—at the north end of the culvert, and then into a drainage ditch, to be dug across the land of another, until it met an existing ditch on the land north of Randolph Road. The drainage plan was approved by the WSSC as required by law [County Code (1955) §§ 74-52 (b), 74-95, 93-14], prior to its submission to the Public Works Department (the PWD) of the County. The County prematurely issued the paving permit (No. 4-599) on August 24, 1955, because the permittee was under "pressure" to get the paving under way. As a result the permittee was allowed to begin paving

before he had obtained the drainage ditch easement he had agreed to procure as one of the conditions on which the permit was predicated. The permit specifically required, among other things, that the permittee should "obtain [the] necessary easement for [the] construction, operation, and maintenance of Outlet W-1." But he never complied with the requirement.

The efforts of the permittee to comply with the requirement by purchasing the easement, as was contemplated, proved fruitless. The owner of the land would not sell the permittee an easement, and he stopped trying. In the negotiations which followed between the PWD and the permittee, the department finally offered to condemn the necessary easement if the permittee would furnish an additional bond to cover the estimated condemnation damages and costs, but he declined to accept the offer.

In the several discussions with officials of the County with regard to the permit, both before and after it had been issued, the permittee interposed no objection to the requirement that he should procure the easement until most of the other required work had been completed. But, in his testimony at the trial, he indicated that he had always intended to do only what was "within his ability" and no more.

Most of the required work was completed, but when the County notified the permittee that he was in default with respect to what remained, including the procurement of the easement, he filed a bill for an injunction to forestall forfeiture of the performance bond, and for a decree declaring the rights, status and legal relations of the parties to the permit and, particularly, as to the validity and binding effect of the requirement that the permittee should obtain the drainage ditch easement.

The demurrer to the original bill was sustained with leave to amend. The amended bill sought only a declaratory decree, claiming that the requirement was illegal and not binding because it was an abuse of power by the County; because it "extorted" private funds to provide for public works without just compensation; and because the requirement was too vague and indefinite to be valid and enforceable. The County,

demurring to the amended bill, contended there was a want of necessary parties, that the permittee was not entitled to any relief in equity and that the amended bill substantially changed the character of the original bill. When the demurrer to the amended bill was overruled, the County answered and the action came on for trial on its merits. Before the trial began the permittee sought and was granted leave to amend further by appending two additional prayers for relief to the amended bill—one to the effect that, if the disputed requirement be found valid and binding, the court should also determine the damages due the County, and the other to the effect that, if the requirement be found invalid, the court should require the County to release the performance bond upon satisfactory completion of the work remaining to be done other than the procurement of the drainage ditch easement. Although, at first, the County objected to the amendment, it finally conceded that the additional prayers would not prejudice its case, and proceeded to trial on the issues raised by the amended bill and its previous answer thereto.

On this appeal, the County has renewed its contention, pursuant to Maryland Rule 373 c, that its demurrer to the amended bill should have been sustained, primarily because it contends other persons should have been made parties. But, as we see it, it is not essential to consider any of the questions raised by the demurrer. Since the rights of the W. S. S. C. and the surety on the performance bond are not adjudicated in this proceeding and will not be affected or prejudiced by the decree to be entered in conformity with this opinion, we think the failure to require the joinder of those parties was not reversible error. See Code (1957), Art. 31A, § 11. Cf. *Reddick v. State*, 213 Md. 18, 130 A. 2d 762 (1957). Moreover, we think the County, when it acceded to the appendage of the additional prayers, in effect waived the question of jurisdiction and abandoned its contention that the amended bill altered the character of the original bill. See *Moore v. McAllister*, 216 Md. 497, 141 A. 2d 176 (1958).

On the merits, the chancellor was of the opinion that the requirement was invalid and unenforceable against the per-

mittee because the County, by issuing the permit before the necessary "right of way" had been acquired or dedicated to public use, undertook to transfer its responsibility to the permittee by requiring him to obtain the necessary easement for the drainage ditch over private property for a public use. We do not agree.

As may be seen, the question to be resolved requires an examination of the pertinent terms and provisions of the law regulating the construction and maintenance of roads and streets in Montgomery County, commonly known as the "Road Code," and the relevant terms and provisions of the performance bond. The County divides its streets and roads into two categories depending on "who" is responsible for the original cost of construction. The total cost of roads and streets constructed by the County for public use, including the cost of rights-of-way and easements, is paid by the County. County Code (1955) [Chapter 93], § 93-13. On the other hand, the *entire* initial cost of grading and constructing roads and streets for the benefit of individual and private corporate taxpayers—upon the granting of a permit for such purposes—is borne by the individual or private corporation to whom the permit is issued and no exceptions are provided. County Code § 93-14. Moreover, each permittee is required to deliver to the County, prior to beginning any grading or construction, a performance bond in such amount "as is estimated to be the *total cost of the project.*" (Emphasis added.) County Code, § 93-16. However, one of the conditions of the permit is that it shall not issue "unless the *right of way* has been acquired by the county or has been dedicated to public use." (Emphasis added.) County Code § 93-15 (h).

The *condition* of the performance bond, which was furnished as one of the conditions of the issuance of the permit, besides providing that the permittee had obligated himself to comply with the provisions of the road code and to perform and complete the work for which the permit was issued in a manner satisfactory to the PWD, further obligated the permittee to save the County harmless from "any expense incurred through the failure of the [p]ermittee * * * to

complete the work as required by the * * * [road code] * * * and as * * * specified in * * * [the] approved application * * *."

Thus, the real question, as we see it, is whether the County had authority to prescribe the terms and conditions it imposed before it consented to grant permission for the paving of Galena Road. We think it is clear that it did.

Montgomery County has full and complete jurisdiction and control over its streets and roads. See County Charter, Art. II, § 4; Code (1951), Art. 25A, § 5 (L) and § 5 (U);[1] and County Code (1955) [Chapter 2], § 2-16 (2) and § 2-23 (5) as to the powers of the County relative to its streets and roads generally. We think the term "easement" is encompassed within the meaning of the term "right of way" as used in § 93-15 (h), *supra,* and that the condition imposed by that section is a reasonable and valid exercise of municipal power which is not subject to judicial interference. *Kennedy-Chamberlin Development Co. v. Snure,* 212 Md. 369, 378, 129 A. 2d 142 (1957). But even if "right of way" does not include "easement" as used in the statute, it is clear that the County, within the discretion of the municipal authorities, has full power and authority—conferred upon it by § 93-14, *supra* —to regulate the extent and character of the improvements contemplated by the grading and construction of streets and roads by "private" persons for their own benefit. Moreover, the right to grant or withhold its permission for the paving of Galena Road carries with it the right to prescribe reasonable terms and conditions upon which the permit would issue other than those specifically prescribed by § 93-15, *supra.* See *N. C. Railway Co. v. Baltimore,* 21 Md. 93 (1864). See also *Baltimore v. Steam Packet Co.,* 164 Md. 284, 164 A. 878 (1933), where it was held that the acceptance of rights or franchises from a city includes acceptance of the conditions imposed. Cf. *Oliver v. Water Works & Sanitary Sewer Board,* 261 Ala. 234, 73 So. 2d 552 (1954).

Essentially, the acceptance of the permit, which is the sub-

---

1. Sections 5 (L) and 5 (U) of Art. 25A are codified as § 5 (K) and § 5 (T), respectively, in the Code of 1957.

ject of this controversy, *obligated* the permittee to either procure the drainage ditch easement or save the County harmless from "any expense incurred" by it in connection with the failure of the permittee to complete the work "specified in the approved application" for the permit. The requirement that the permittee should comply with the condition imposed—*i. e.,* that he should procure at his expense the necessary easement to complete the paving project—and file a performance bond to assure such compliance, was a reasonable exercise of the County's municipal and police powers under the County Charter. *Allen v. Stockwell,* 210 Mich. 488, 178 N. W. 27 (1920). But this is not a case which involves a constitutional question concerning the police powers of the County nor is it a case which involves the taking of property without just compensation such as the courts were concerned with in *State ex rel. Lewis v. City of Minneapolis,* 140 Minn. 433, 168 N. W. 188 (1918); *Appeal of Radnor Township,* 40 Del. Co. 106 (Pa. Quar. Sess.); *Ayres v. City Council of City of Los Angeles,* 34 Cal. 2d 31, 207 P. 2d 1 (1949); and *C. & P. Tel. Co. v. Board of Forestry,* 125 Md. 666, 94 A. 322 (1915). Instead, this is a case which involves the impossibility of performing a contract which does not relieve the promissor. See *Ess-Arr Knitting Mills v. Fischer,* 132 Md. 1, 6, 103 A. 91 (1918).

The decree must be reversed.

> *Decree reversed and case remanded for the entry of a declaratory judgment consistent with this opinion and in conformity with the first additional prayer for declaratory relief, the appellee to pay the costs.*