## MONTGOMERY COUNTY, MARYLAND et al. v. PHOENIX INSURANCE COMPANY

[No. 346, September Term, 1962.]

*Decided June 18, 1963.*

*Motion for rehearing filed July 18, 1963, denied September 9, 1963.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*Douglas H. Moore, Jr., Deputy County Attorney for Montgomery County,* with whom was *Robert G. Tobin, Jr., County Attorney,* on the brief, for Montgomery County, one of the appellants.

*Joseph M. Mathias* for the R. & G. Construction Company, Inc., the other appellant.

*John P. Moore* and *John B. Cullen* for the appellee.

HAMMOND, J., delivered the opinion of the Court.

In late 1956 Fred Way, a developer of real estate, gave a bond as principal, with Phoenix Insurance Company as surety, in the amount of $9,693.00 to Montgomery County, obligee, to meet a condition precedent for the issuance of a permit by the County for the building of a road in a subdivision owned by Way, known as West Olney Park. The right of way for the road had been dedicated and graded. One of the obligations of the bond was that the permittee shall "* * * fully meet and faithfully perform his, their or its obligations in completing the work for which said permit is issued, and shall well and truly and in a manner satisfactory to the Department of Public Works of Montgomery County, Maryland, complete the

work described in said approved application * * *." The obligations were to remain in full force and effect "until the work described in the application has been approved or accepted pursuant to the provisions of the Montgomery County Road Construction Code."

Way did not build the road and lost title to West Olney Park in a foreclosure in 1957. About a year later, R. & G. Construction Co., Inc., bought the development after its officer had been told by the broker and the then owner that there was a road bond in force to guarantee completion of the road in the development. On June 5, 1959, Montgomery County wrote Phoenix, as surety, that the bond had been put in default in January, that Phoenix's agent had been advised that the bond would not be released unless all interested lot owners in West Olney Park agreed, that the lot owners were calling for the building of the road, and that the County would expect Phoenix to complete the road without delay.

Phoenix refused to admit liability and did not act. On September 29, 1959, R. & G. and Montgomery County, by a formally executed document, recited that the road should be constructed, that the County had no funds available for the construction and would not have until it obtained them from Phoenix or they were included in a budget appropriation, and agreed that (a) the County would construct the road if R. & G. would place in its hands a sum of money equal to the estimated cost of construction and pay any additional cost, upon completion, and (b) the County would sue Phoenix on the bond and, if successful, pay over the recovery to R. & G. If the County did not recover, it had no further liability to R. & G. On October 27, 1959, R. & G. deposited $12,882.00 in escrow for the use of Montgomery County, which several weeks later awarded a contract for the building of the road to a Frederick contractor who agreed to and did build it for $11,461.00.

Suit was filed on the bond by Montgomery County (by amendment Montgomery County, to the use of R. & G., was added as a plaintiff) against Way and Phoenix. Way had disappeared and could not be served, and the case went to trial

against Phoenix before Judge Pugh, sitting without a jury. He said in his opinion that "the County wants to recover from a defendant in order to pay the money over to a total stranger to the transaction. The Court does not believe that * * * such a manipulation was contemplated when the bond was executed * * *. The County has not been damaged nor has it incurred any expense through the failure of the permittee as stated in the bond. The County is attempting to enrich a total stranger to the original transaction. The Court should not aid such an attempt."

Judge Pugh's translation of his beliefs as to the ethics and desirability of Montgomery County's effort to recover on the bond into a judicial denial of its right to do so finds no support in law, as we see it.

Phoenix defends on the grounds that the County was not damaged and therefore is not entitled to recover. The contention is beside the point. It is well settled that if a bond is given to a public body as a prerequisite to the grant of a license or other privilege, or conditioned upon compliance with the requirements of law, the full penalty of the bond may be recovered for a breach of the bond, without proof of actual damage, in the absence of express or implied provisions to the contrary in the statute or ordinance which prescribes the bond, or in the bond itself. *Clark v. Barnard,* 108 U. S. 436, 27 L. Ed. 780 (breach of bond to the State of Rhode Island for failure to build a railroad as agreed) ; *United States v. Dieckerhoff,* 202 U. S. 302, 50 L. Ed. 1041; *Fresh Grown Preserves Corporation v. United States* (4th Cir.), 144 F. 2d 136; *Eagle Indemnity Co. v. United States* (4th Cir.), 22 F. 2d 388; *State v. Wipke* (Mo.), 133 S. W. 2d 354; *State v. Vending Machine Corp. of America* (Okla.), 51 P. 2d 724; 11 C. J. S. *Bonds* Sec. 130, p. 510.

We held in *County Council v. Lee,* 219 Md. 209, in dealing with the statutory provisions applicable here, that Montgomery County has full and complete jurisdiction and control over its roads and streets, that the County's right to grant or withhold its permission for the construction of a road by a citizen carried with it the right to prescribe reasonable terms and

conditions upon which the permit to build the road would issue, and that the bond (which was indistinguishable from the one before us), which had been filed in conformity with the County Code, obligated the permittee "to perform and complete the work for which the permit was issued * * *."

The Montgomery County Code, 1960 Ed., Secs. 100-15, 100-16, and 100-17, under the subtitle "Montgomery County Road Construction Code," are directly applicable here.[1] Sec. 100-15 provides that no person shall construct (or begin to construct) a road without obtaining a permit. Sec. 100-16 specifies the conditions of permits, such as that the construction shall conform to law and to the minimum requirements of the particular road class involved, the permittee must comply with written requirements of the county manager which are deemed necessary in the interests of public safety, and the right of way must have been acquired by the County or have been dedicated and graded. Sec. 100-17, entitled "Performance bond," provides that prior to the beginning of the work a cash or corporate bond shall be delivered to the County "in such amount as is estimated to be the total cost of the project." The bond "shall run to the county, and be conditioned as follows": (1) That the permittee will comply with the Road Code; (2) "That the permittee * * * will faithfully complete the work for which the permit is issued"; (3) That the permittee will save harmless the County from any expense incurred by reason of failure of the permittee to complete work "as required by this Code" or from damage flowing from the negligence of the permittee.

The bond, as executed and filed, complied with the statutory provisions. It obligated the principal to faithfully complete the road and, so, was conditioned upon the doing of an affirmative, particular act. It was, therefore, as was held in the *Lee* case, a performance bond, for the breach of which Montgomery County, the obligee, could recover the stated penalty, without a showing of damages. That the bond also

---

1. At the time of the giving of the bond these sections were Sections 93-14, 93-15, and 93-16 of the Montgomery County Code, 1955 Ed.

contained another condition of indemnity did not keep the condition of faithful performance from being subject to the usual rule as to performance bonds.

"If the conditions of a bond are severable, and some of them indemnifying and some conditions of forfeiture, the bond can be enforced as to the conditions of forfeiture." *Eagle Indemnity Co. v. United States,* 22 F. 2d 388, 391; *Brooke County Court v. United States Fidelity & Guaranty Co.* (W. Va.), 121 S. E. 422. *Cf. United States v. Mora,* 97 U. S. 413, 24 L. Ed. 1013; *Terre Haute & I. R. Co. v. Peoria & P. U. Ry. Co.* (Ill.), 55 N. E. 377.

It is admitted that the road was not built by Way and that the bond was breached. Phoenix concedes actual notice of these facts. The bond provides that the obligations it creates continue in full force and effect until the road has been approved or accepted. Since the County had the right to recover the full penalty of the bond without regard to a showing of actual damage, it is immaterial that it determined to use the amount recovered to reimburse the company which agreed to supply funds initially to build the road. Yet, as it happens, the money recovered from Phoenix will be used for the purpose for which the guarantee of the bond ran—the building of the road.

Judgment will be entered for the penalty of the bond, $9,693.00, plus interest from June 5, 1959, the date of demand for payment. *Mullan Co. v. International Corp.,* 220 Md. 248, 261, 262; *Affiliated Distillers v. R. W. L. Co.,* 213 Md. 509.

> *Judgment reversed, and judgment entered against Phoenix Insurance Company in favor of Montgomery County for $11,717.21, with interest from November 28, 1962; costs shall be paid by appellee.*